IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIELLE McCOY, et al.

      v.                   :   Civil Action No. DKC 19-2137

TRANSDEV SERVICES, INC.

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), is the Motion for Conditional Certification and Court-Authorized Notice filed by Plaintiffs. (ECF No. 27). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted, with modifications.

## I.  Background[1]

Transdev Services, Inc. ("Defendant" or "Transdev") is a Maryland corporation which provides paratransit and non-emergency medical transportation ("NEMT") services to individuals in Maryland. In the past, Transdev operated under the names Veolia Transportation, Inc. and Yellow Van Services, Inc. Transdev operated under two contracts: one, with the City

---

[1] Unless otherwise noted, all facts are taken from Plaintiffs' complaint, (ECF No. 1).

of Baltimore, to provide NEMT services (the "Baltimore Contract"), and another, with the State of Maryland, to provide paratransit services (the "Maryland Contract"). Both contracts have been in effect for over a decade. Transdev has entered into two separate subcontracts (collectively, the "Davi Subcontracts") with Davi Transportation Services, LLC ("Davi") for a portion of the work required of Transdev under each contract.

The Plaintiffs performed work that Transdev promised to perform under the Maryland Contact and Baltimore Contract, through the Davi Subcontracts. Some of the Plaintiffs performed work under both the Maryland Contract and the Baltimore Contract, while others only performed work under one of the two contracts. Regardless of which contract a given Plaintiff worked under, though, the job duties were all essentially the same:

> picking up, transporting, and dropping off individuals with disabilities and their aides; affixing wheelchairs to the vehicle; communicating with passengers in a manner compliant with Transdev's policies, refilling the vehicle with gasoline at the end of the workday; and completing required paperwork such as Driver Manifests and vehicle inspection forms.

(ECF No. 1 ¶ 35). The one exception to this was Plaintiff Deandre Banks. While all of the other Plaintiffs worked as drivers, Mr. Banks worked as a dispatcher and road supervisor.

Plaintiffs allege that across all of the contracts and subcontracts, Transdev misclassified the Plaintiffs as independent contractors. Plaintiffs claim that they were in fact employees of Transdev.

On July 19, 2019, Plaintiffs filed a collective action complaint on behalf of themselves and all others similarly situated pursuant to the FLSA. Plaintiffs also bring individual breach of contract claims as well as claims pursuant to (1) the Maryland Wage and Hour Law ("MWHL") Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a), and 3-420; (2) the Maryland Living Wage Law ("MLWL") Md. Code Ann., State Fin. & Proc. § 18-101 *et seq.*; and (3) the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a). (ECF No. 1 ¶¶ 85-131). Transdev answered on September 4, 2019. (ECF No. 4). On November 18, 2019, Plaintiffs filed their motion for conditional certification pursuant to FLSA. (ECF No. 27). Transdev responded in opposition on December 10, 2019, (ECF No. 32), and Plaintiffs subsequently replied, (ECF No. 33). Since filing their papers related to class certification, the parties began written discovery, (ECF No. 36-1, at 2), under the supervision of Magistrate Judge A. David Copperthite, (ECF No. 37). As of March 18, 2020, deposition discovery has been delayed indefinitely due to the Covid-19 crisis, although written discovery remains ongoing. (ECF No. 42).

## II.  Analysis

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008).  Section 216(b) provides, in relevant part, as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F.Supp.2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000)).

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process. *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010).  In the first stage, commonly referred to as the notice stage, the court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are similarly situated,' such that court-facilitated notice to putative class members would be appropriate." *Id.* (quoting

4

*Camper*, 200 F.R.D. at 519).   In the second stage, following the close of discovery, the court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by § 216(b).   *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007).   At this later stage, referred to as the decertification stage, the court makes a final decision about the propriety of proceeding as a collective action.   *Syrja*, 756 F.Supp.2d at 686 (quoting *Rawls*, 244 F.R.D. at 300).   Plaintiffs here have moved for conditional certification of a collective action and they have requested court-facilitated notice to potential opt-in plaintiffs.

> **A.   Conditional Certification Is Appropriate Because Plaintiffs Have Made a "Modest Factual Showing" that Employees Working under Both Contracts are "Similarly Situated"**

"Determinations of the appropriateness of conditional collective action certification . . . are left to the court's discretion."   *Id.;* see also *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).   The threshold issue in determining whether to exercise such discretion is whether Plaintiffs have demonstrated that potential opt-in plaintiffs are "similarly situated."   *Camper*, 200 F.R.D. at 519 (quoting 29 U.S.C. § 216(b)).   "'Similarly situated' [does] not mean 'identical.'" *Bouthner v. Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D.Md. Mar. 5, 2012) (citing *Hipp v. Liberty Nat'l*

*Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)).  Rather, a group of potential FLSA plaintiffs is "similarly situated" if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law.  *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-0273, 2008 WL 4735344, at *3 (D.Md. Oct. 14, 2008); *Quinteros*, 532 F.Supp.2d at 772. To satisfy this standard, plaintiffs generally need only make a "relatively modest factual showing" that such a common policy, scheme, or plan exists.  *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D.Md. 2006).

Plaintiffs have sought to make such a "modest factual showing" through the declarations of plaintiffs Danielle McCoy, (ECF No. 27-6), Monica Lasandra Jones, (ECF No. 27-7), Connie Jones, (ECF No. 27-8), Tyree Miles, (ECF No. 27-9), Sa'Quan Miller, (ECF No. 27-10), and Jawhann Price, (ECF No. 27-11). Each of these declarations recites much the same facts: that Plaintiffs – regardless of whether the work they did was done pursuant to the Baltimore Contract or the Maryland Contract – performed much the same duties: "picking up, transporting, and dropping off people with disabilities and their aides; affixing wheelchairs to the vehicle; communicating with passengers; refilling the vehicle with gasoline at the end of the workday; and completing required paperwork, such as Driver Manifests and vehicle inspection forms."  (ECF Nos. 27-6 at ¶ 3, 27-7 at ¶ 3,

27-8 at ¶ 3, 27-9 at ¶ 3, 27-10 at ¶3, and 27-11 at ¶ 3).

Likewise, Plaintiffs under both contracts were referred to as

"contractors," (*id.*), and underpaid in ways that allegedly both

denied them overtime pay, and resulted in minimum wage

violations, (*id.*).

Transdev raises several objections to conditional

certification. Most significantly, Transdev suggests that

because Plaintiffs' declarations concede that some drivers

operated under different contracts than others, Plaintiffs

cannot be "similarly situated." (ECF No. 32, at 6-7). Transdev

argues that the different contracts require different "terms and

conditions[,]" and that Plaintiffs have "completely failed" to

explicate the differences in those terms and conditions. (*Id.* at

7-8). While the burden is on the Plaintiffs to establish that

they are "similarly situated," that does not mean Plaintiffs

need to explain away every possible distinction between

prospective class members. Again, Plaintiffs are required to

establish that they are *similarly* situated, not *identically*

situated. *Bouthner*, 2012 WL 738578, at *4. Plaintiffs have

done more than enough to show that their duties were similar and

that Transdev's treatment of them – in terms of the control

Transdev exercised over their job performance, Transdev's

classification of them as "contractors" rather than employees,

and Transdev's practices of underpaying them – were also

7

similar.   As   part   of   this   argument,   Transdev   notes   that

Plaintiffs have submitted:

> a contract between Transdev and Davi (see
> ECF   No.   27-12),   which   establishes   the
> existence   of   the   [Baltimore   Contract].
> Notably, this contract clarifies that Davi
> will   invoice   Transdev,   and   that   Transdev
> must pay Davi.   Certain Plaintiffs have not
> submitted   any   support   as   to   a   contract
> between the MTA Contract between the State
> of Maryland and Transdev.

(ECF No. 32, at 7).  The meaning of this paragraph is not clear.

Transdev  also  suggests  that  Plaintiffs'  submission  of  a

driver manifest, (ECF No. 27-13), is flawed because the manifest

is "void of driver names[.]" (ECF No. 32, at 7).  Transdev does

not  explain  why  this  fact  would  suggest  Plaintiffs  are  not

"similarly  situated"  and  such  an  argument  is  difficult  to

discern.  Transdev  argues  that  "[i]t  is  unclear  if  these

manifests  are  even  relevant  to  this  matter."  (*Id*.).   The

manifest  was  an  example  of  the  way  routes  were  assigned  to

drivers.   Plaintiffs'  declarations  are  more  than  enough  to

establish that they are similarly situated, and the submission

of  a  singular,  unmarked  driver  manifest  as  an  example  does

nothing to undermine those declarations.

Finally,  Transdev  raises  two  legal  arguments  which

significantly  misconstrue  this  court's  precedents.   First,

Transdev suggests that "[a]lthough courts have held testimony at

deposition  sufficient  to  meet  plaintiffs'  burden,  conclusory

affidavits are inadequate." (ECF No. 32, at 5) (citing *Camper*, 200 F.R.D. at 520). Transdev seems to derive such a holding from the *Camper* court's paraphrasing of a 1999 opinion from the United States District Court for the District of Texas, *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999). *Camper* paraphrases that opinion as "denying request for court facilitated notice because the only evidence of similarly situated class members was conclusory affidavits stating the individuals' beliefs that others had been subjected to similar discrimination[.]" *Camper*, 200 F.R.D. at 520. But the court in *Camper* explicitly stated that the showing of "similarly situated" status "*by affidavit* or otherwise must be made." *Id*. at 519 (emphasis added). Plaintiffs' affidavits are by no means conclusory. They include significant factual detail establishing that the Plaintiffs are similarly situated.

Second, Transdev argues that Plaintiffs "must establish coordinated, uniform illegality in plaintiffs' treatment." (ECF No. 32, at 7) (citing *Camper*, 200 F.R.D. at 520). This is not the standard. Rather, at the conditional certification stage, Plaintiffs must make a modest factual showing "that potential plaintiffs were subjected to a common ... scheme." *Camper*, 200 F.R.D. at 520 (quoting *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 432 (S.D.N.Y.1995)). *See also* B*utler v. DirectSAT USA LLC*, 876 F. Supp. 2d 560, 566 (D.Md. 2012) (Chasanow, J.)

(describing the standard as requiring plaintiffs to make a "relatively modest factual showing' that . . . a common policy, scheme, or plan [that violated the law] exists") (quoting *Marroquin*, 236 F.R.D. at 259); *Schilling v. Schmidt Baking Co.*, No. 16 Civ. 2498, 2018 WL 3520432, at *3 (D.Md. July 20, 2018) (discussing the lenient standard applied by courts at the notice stage). Again, through their declarations, Plaintiffs have made such a showing.

Transdev argues in the alternative that "if the Court certifies a collective, the Court should differentiate the drivers under the BCHD Contract from the drivers under the MTA Contract." (ECF No. 32, at 8). In making this argument, Transdev confusingly states that "[i]n finding that the plaintiffs and putative class are similarly situated, courts have analyzed whether the plaintiffs identified a single decision, policy, or plan or whether they have instead identified multiple decisions, policies, or plans." (ECF No. 32, at 8) (citing *Smith v. T-Mobile USA, Inc.*, No. CV 05-5274SABC, 2007 WL 2385131, at *8 (C.D. Cal. Aug. 15, 2007)). The case which Transdev cites in support of this argument did not certify two different collectives; rather it denied plaintiffs' motion for conditional certification and held that "any claims and defenses must be made individually as to each Plaintiff." *Smith*, 2007 WL 2385131, at *8. Transdev's argument

for splitting the collective in two is simply a rehash of the argument for denying certification at all.  That argument boils down to, essentially: "there are two different contracts." Transdev does not suggest what about the existence of the two different contracts would contradict a finding that Plaintiffs under distinct contracts are similarly situated.  Rather, they make the conclusory statement that "there is no uniformity amongst the drivers if the collective is certified under both contracts." (ECF No. 32, at 8).  In other words, while Transdev has pointed out that there exists at least one dissimilarity between certain Plaintiffs – that they worked under different contracts – they have in no way explained why that dissimilarity is significant.

### 1.  Tolling

Plaintiffs request that "the Court toll the statute of limitations for all members of the Collective from November 18, 2019, the date on which Plaintiffs filed their motion, through the date the Court enters an Order on the motion." (*Id.*). Defendant neither objects nor addresses the issue of tolling.

Equitable tolling is appropriate when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000).  "[T]he delay caused by the time required for a court to rule on a motion, such as one for certification

11

of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (citing *Yahraes v. Restaurant Assocs. Events Corp.*, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011) (collecting cases)). Equitable tolling is thus appropriate in this type of case when ruling on the motion is delayed. Taking into account the current public health crisis, during which many deadlines in civil cases have been extended, and in light of the absence of objection, the request will be granted.

### 2. List of Potential Plaintiffs

Plaintiffs request that the Court order Transdev to produce a computer-readable list of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Collective Members, and the last four digits of Social Security numbers for those Collective Members whose Notices are returned as undeliverable. (ECF No. 27-1, at 15-16). Again, Transdev neither objects to nor addresses this request. Plaintiffs' request will be granted.

### B. Court-Facilitated Notice to Potential Opt-in Plaintiffs Is Proper

Because Plaintiffs have made a preliminary showing that Plaintiffs employed under both contracts are "similarly

situated," notice of this action will be provided to "drivers who worked under the Transdev-Davi Subcontracts at any time between November 18, 2016 and the date on which the Court grants this Motion[.]" (ECF No. 27-1, at 15). Plaintiffs request to send notice by U.S. Mail, e-mail, and Facebook advertising.

Transdev objects to much of Plaintiffs' proposed notice. As to the substance of the notice, Transdev requests four additions: "a statement of Defendant's position regarding the claims and litigation; language advising potential plaintiffs of their right to join suit with their own attorney; language advising potential plaintiffs of the possibility of having to participate in the discovery process and at trial; and Defendant's counsel's contact information." (ECF No. 32, at 8).

Transdev also proposes several changes to the form of notice. First, it argues that e-mail should not be used in the first instance and instead requests that "notice be effectuated by U.S. Mail, with e-mail as a back-up if the mailed notice is returned as undeliverable." (ECF No. 32, at 9). Transdev notes that a number of courts outside of this district have rejected e-mail as a primary means of notification, but Transdev does not even attempt to argue *why* e-mail should be rejected as a primary means. (*Id.*) Second, Transdev argues that Facebook advertising is inappropriate:

> Transdev objects to the proposed Facebook (social media) posting as unnecessarily

13

> redundant. Certain Plaintiffs have made only
> a speculative showing or argument why a
> Facebook notice may be necessary in this
> case to reach the intended persons who fall
> within any conditionally certified
> collective. A Facebook posting by a known
> FLSA plaintiff's firm has a significant
> chance of being widely disseminated well
> beyond any collective the Court may
> conditionally certify as such postings are
> picked up by other websites. A social media
> post allows a plaintiff who has failed to
> establish a common scheme over a large
> geographic area to reach a much broader
> audience. That is not the intent of the
> court's development of case law requiring a
> modest showing of a common scheme before
> notice is permitted.

(*Id.* at 10). Transdev argues that both Facebook advertising and

a stand-alone website notifying potential class members could

cause undue reputational harm to Transdev. (*Id.* at 10-11).

Transdev also opposes the sending of "reminder post cards" to

class members following initial notification. (*Id.* at 11-12).

Finally, while Transdev does not allude to this change in its

briefing, its proposed form of notice shortens the notice period

from 90 to 45 days. (ECF 32-2, at 3).

The district court has broad discretion regarding the

"details" of the notice sent to potential opt-in plaintiffs.

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)

(citing *Hoffmann-La Roche*, 493 U.S. at 171). "The overarching

policies of the FLSA's collective suit provisions require that

the proposed notice provide 'accurate and timely notice

concerning the pendency of the collective action, so that

[potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)).

Transdev's proposed substantive changes are, for the most part, semantic complaints.  Transdev argues for the inclusion of "a statement of Defendant's position regarding the claims and litigation." (ECF No. 32, at 8).  But Plaintiffs have already written such a statement, noting that "Transdev denies Plaintiffs' allegations" at the outset and again, after describing their claims in detail, that "Transdev denies these allegations." (ECF No. 27-3, at 1,2).  Plaintiffs' proposed notice also states that "Transdev maintains that it did not violate the FLSA, and that it is not liable for the allegations in this case." (*Id.* at 2).  Plaintiffs' proposed description of Transdev's position is more than adequate.

Transdev also argues for "language advising potential plaintiffs of their right to join suit with their own attorney[.]" (ECF No. 32, at 8).  Plaintiffs have already included such language, explicitly stating that "[i]f you choose to bring your own action against Transdev, you may hire your own attorney and enter into a separate fee arrangement directly with your own attorney." (ECF No. 27-3, at 4).  Transdev's proposed

15

form of notice makes no changes to the section entitled "Should I get my own lawyer?" By the same token, Transdev wants "language advising potential plaintiffs of the possibility of having to participate in the discovery process and at trial[.]" (ECF No. 32, at 8). Again though, they make no proposed changes to Plaintiffs' own language which states that "you may be asked to provide documents or information relating to your employment, or otherwise participate in written and/or oral discovery proceedings and/or in a trial of this matter." (ECF No. 27-3, at 3). No changes to Plaintiffs' language on either of these subjects will be made.

Transdev's next substantive complaint is that contact information for defense counsel is not included. (ECF No. 32, at 8). Defendant provides no support for the inclusion of defense counsel's contact information: it does not suggest why it is necessary, nor does it cite a single case where such information is included. Plaintiffs, by contrast, have provided ample support for their position that including Defense counsel's contact information raises potential problems. (ECF No. 33, at 11) (citing, e.g., *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 847 (N.D. Cal. 2010) ("[i]ncluding contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion.")) In light of these facts,

the court sees no reason to mandate inclusion of defense counsel's contact information.

Finally, Transdev's proposed notice changes the anti-retaliation language in Plaintiffs' original proposed notice by significantly shortening it. Plaintiffs' proposed language is as follows:

> It is a violation of federal law and state law for Transdev or any of its related entities, including Davi, to fire, discipline, or in any manner discriminate or retaliate against you for taking part in this case. If you believe that you have been penalized, discriminated against, or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, please contact Plaintiffs' lawyers or other lawyers of your choosing right away.

(ECF No. 27-3, at 3). In contrast, Transdev's proposed language is: "Federal law prohibits Transdev or any of its related entities from taking any action against you because you elect to join this action or otherwise exercising your rights under the FLSA." (ECF No. 32-2, at 9). Again, Transdev provides no support for why such a change might be necessary, nor do they even alert the court to the existence of this change in their response. Again, Plaintiffs' accurate statement of anti-retaliation law will not be altered.

Transdev's complaints regarding the means of providing notice, while somewhat better supported, are still minor.

17

First, Transdev attempts to change the notice period to 45 days.
(ECF No. 32-2, at 8).   Again, though, Transdev neither argues
for this modification nor brings it to the court's attention in
its response.   Even if it had, however, while notice periods may
vary, numerous courts around the country have authorized ninety-
day opt-in periods for collective actions. See, e.g., *Wass v.
NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *10
(D.Kan. Mar. 28, 2011) (denying the defendant's request to
shorten the opt-in period below ninety days); *Calderon v. Geico
Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *2, 8-9
(D.Md. Jan. 12, 2011) (authorizing a ninety-day notice period);
*Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68-69 (E.D.Pa.
2009) (finding a ninety-day opt-in period to be reasonable).

Next, Transdev takes issue with the use of e-mail as a
primary means of notification.   This court has previously noted
that "communication through email is [now] the norm."   B*utler*
876 F.Supp.2d at 575 (citing *Deloitte & Touche, LLP Overtime
Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)).   As in
*Butler*, there is no sound reason here to forgo e-mail
notification.

Along the same lines, Transdev opposes Facebook
advertising.   In light of Plaintiffs' numerous declarations
alluding to the number of potential plaintiffs who regularly
communicate primarily by Facebook, such a means of notification

is entirely reasonable. (ECF Nos. 27-6, 27-7, 27-8, 27-9, 27-10, 27-11); *see also*, *Beltran v. Interexchange, Inc.*, No. 14 Civ. 03074, 2017 WL 4418684, at *6 (D.Colo. Apr. 28, 2017) (noting that "[r]ecent opinions recognize the efficiency of the internet in communicating to class members" and authorizing plaintiffs to "distribute notice through the requested [social media] channels"); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. 15 Civ. 1427, 2016 WL 3440007, at *22 (D.Md. June 22, 2016) ("the use of a website and Facebook are reasonable methods to employ" for distribution of notice); *Woods v. Vector Mktg. Corp.*, No. 14 Civ. 0264, 2015 WL 1198593, at *5 (N.D.Cal. Mar. 16, 2015) ("The Court finds that using a Facebook ad is a particularly useful form of ensuring actual notice in this case."); *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, at *5 (S.D.N.Y Nov. 3, 2014) ("To the extent Plaintiffs propose to use social media to provide potential plaintiffs with notice that mirrors the notice otherwise approved by the Court, that request is granted.").

In opposition, Transdev argues that a Facebook ad may cause Transdev reputational harm and points out that other courts have rejected the use of Facebook notice. (ECF No. 32, at 10). The debate is essentially over *how* Plaintiffs propose to use Facebook: in the form of a public-facing advertisement, or in the form of individualized messages to prospective plaintiffs.

Plaintiffs' declarations all specifically note that other employees use Facebook "to communicate." The court will limit the use of Facebook notice to targeted, private communications to potential plaintiffs, rather than a public facing ad. This is in line with the method of Facebook notice allowed in *Mark v. Gawker Media LLC*:

> Plaintiffs' proposed use of Twitter, LinkedIn, and Facebook is also overbroad. The Court approved use of social media notice on the understanding that such notice would effectively mirror the more traditional forms of notice being used in this case. This generally means that it expected the notice to contain private, personalized notifications sent to potential plaintiffs whose identities were known and would may not be reachable by other means. To the extent that Plaintiffs' proposals are shot through with attempts to send public-facing notices—such as general tweets rather than direct messages, or publicly accessible groups—they cease to parallel the other forms of notice that the Court has already approved.

*Mark v. Gawker Media LLC*, No. 13-CV-4347, 2015 WL 2330079, at *1 (S.D.N.Y. Mar. 5, 2015). In other words, Plaintiffs may use Facebook in such a way as to mirror the traditional forms of notice, rather than using it as an end-run to creating a far broader, more public-facing form of notice. *See also Weinstein v. 44 Corp.*, No. 2:19-cv-105-RWS, 2019 WL 5704137, at *5 (N.D. Ga. Nov. 4, 2019) ("given that Facebook involves many ways to share information – some public – the Court finds that the

delivery should be limited to . . . private messages [to]
potential plaintiff[s.]")

Transdev raises much the same points regarding a public-
facing website, arguing that "[c]reation of a website for the
lawsuit would cause reputational harm to Transdev while being of
little value to plaintiffs." (ECF No. 32, at 8). Plaintiffs
reply that such a website "simply functions as a landing page
for putative opt-ins who receive the notice through U.S. mail,
email, or Facebook," and points out that any reputational harm
that the website could work in and of itself is mitigated by the
fact that this lawsuit is already public. (ECF No. 33, at 14).
The purpose of this standalone website is to provide a method
for opt-in plaintiffs to submit consent forms. It is
appropriate to do so, particularly at this time when mail
delivery is more cumbersome and difficult.

Finally, Transdev opposes the sending of reminder
postcards. (ECF No. 32, at 11). In so doing, Transdev cites
*Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. 07 Civ. 455,
2008 WL 554114 (D.Md. Feb. 26, 2008), for the proposition that
reminder notices have "the potential to unnecessarily 'stir up
litigation.'" (ECF No. 32-2, at 8). This is a misquotation
and, as a result, a misstatement of this district's
understanding of reminder notices. Indeed, *Montoya* makes no
mention whatsoever of reminder notices. The *Montoya* court

alludes *generally* to the suggestion that courts should "take pains . . . to 'avoid the 'stirring up' of litigation through unwarranted solicitation[.]'" *Montoya*, 2008 WL 554114, at *4 (citing *D'Anna v. M/A-COM, Inc.*, 903 F.Supp.889 at 894 (D.Md. 1995). Reminder notices are "nothing more than a targeted second contact with those likely to be eligible to join the collective action[.]" *Boyd v. SFS Commc'ns, LLC*, No. CV PJM 15-3068, 2017 WL 386539, at *3 (D.Md. Jan. 27, 2017). The court will allow Plaintiffs to send reminder notices as requested.

## III. Conclusion

For the foregoing reasons, the motion for conditional certification and court-authorized notice filed by Plaintiffs will be granted. A separate order will follow.

                                                     /s/
DEBORAH K. CHASANOW
United States District Judge