IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| DANIELLE McCOY, et al. | |
| | : |
| | |
| v. | : Civil Action No. DKC 19-2137 |
| | : |
| TRANSDEV SERVICES, INC. | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case are a motion for leave to file a first amended complaint and a motion to correct that proposed amended complaint (ECF Nos. 95 and 126). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to file a first amended complaint will be granted, and the attempted correction of that complaint will also be granted.[1]

## I.  Background

Defendant Transdev Services, Inc. ("Transdev") is a privately held corporation organized under Maryland law and with its principal place of business in Illinois. It provides paratransit

---

[1] The status of Stacy Smith and Joel Morrison must be clarified. They currently remain as opt-in Plaintiffs, although without counsel, and Defendant filed a motion to dismiss as a discovery sanction. That matter is pending before Magistrate Judge Copperthite.

and non-emergency medical transportation services. Previously, the company has operated under two different names, Veolia Transportation, Inc. and Yellow Van Services, Inc., and under two contracts: one with the City of Baltimore ("the City") and one with the State of Maryland. Transdev has operated under both contracts for more than ten years. To complete a portion of the work, under both, Transdev entered into two different subcontracts with Davi Transportation Services, LLC ("Davi"). The job duties for drivers under these contracts involved a central set of tasks that included "picking up, transporting, and dropping off individuals with disability and their aides[,] affixing wheelchairs to the vehicle[,]" and various other tasks related to maintaining the service vehicles.

On July 19, 2019, Plaintiffs Danielle McCoy, Monica Jones, Connie Jones, Sa'quan Miller, Tyree Miles, and Jawhann Price filed a collective action complaint on "behalf of themselves and others similarly situated" for wage violations under the FLSA, pursuant to 29 U.S.C. §§ 201 *et seq.*, that was joined by Deandre Banks on behalf of himself only. They also brought analogous state statutory wage claims and common law claims as "individual actions,"[2] under (1) the Maryland Wage and Hour Law ("MWHL"), Md.

---

[2] Plaintiffs did not, as Defendant points out, seek class certification for their state statutory and common law claims or otherwise purport to bring these claims on behalf of "others

Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a), and 3-420; (2) the Maryland Living Wage Law ("MLWL"), Md. Code Ann., State Fin. & Proc. § 18-101 *et seq.*; (3) the Maryland Wage and Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a); (4) the City's living wage ordinance, Balt. City Code, Art. 5 § 26; and (5) a breach of contract theory based on Transdev's subcontracts with Davi and as third-party beneficiaries of Transdev's contracts with the City and State.  In particular, these common-law claims asserted that Transdev breached the "living wage provisions" of those contracts. (ECF No. 1).

   With the exception of Mr. Banks, who was a dispatcher and a road supervisor, all were drivers.  Plaintiffs complained that they often worked long hours (more than eight hours per day, "consistently" more than forty hours per week, and "often" more than sixty), but were not paid all the wages they were due.  The drivers asserted that their wages "nearly always" fell below $7 an hour, "sometimes" below $5, and even below $4 when they were assigned routes with wheelchair pickups; they argued that these wage levels violate both federal and state minimum wage laws, as none of the statutory exemptions purportedly applied.  The drivers, for example, complained that they worked between eight and a half

---

similarly situated" as with their FLSA claims.  (ECF No. 108, at 2).  Plaintiffs argue in reply that they only labeled them "individual" to make it explicit that they were not stating a class action claim.  (ECF No. 117, at 4 n.3).

and twelve hours per shift, five days a week, but were only paid between $300 and $900 for a two-week pay period.   Mr. Banks, similarly, asserted that he worked ten to twelve hours a day, five days a week, for only $500 to $600 every two weeks, which he argued amounts to a $5 hourly wage.   Plaintiffs all alleged that they worked hours above forty on various workweeks but were not paid one-and-half times wages as required under these laws.

Plaintiffs moved for conditional certification as a collective, to toll the statute of limitations for all members of that collective from November 18, 2019, and for court-authorized notice under 29 U.S.C. §216(b).  (ECF No. 27).  On May 11, 2020, these requests were granted.   (ECF Nos. 43 and 44); *McCoy v. Transdev Servs., Inc.*, No. DKC 19-2137, 2020 WL 2319117 (D.Md. May 11, 2020).  Nine individuals subsequently filled out and sent in opt-in forms noting their "consent to be a plaintiff in the lawsuit": Tyikiava White, Jasmine Goodman, Joseph Parson, Joel Morrison, Stacey Smith, Damon Massie, Jr., Ayana Bluiett, Teresa Miles, and Christina Collins. (*See* ECF Nos. 47, 50, 51, 53, 54, 55, 60, 61, 73).  The opt-in period closed on September 8, 2020.

## II. Procedural History

On December 8, 2020, Plaintiffs moved for leave to amend the complaint to convert eight of these opt-in Plaintiffs into named Plaintiffs, and thereby to abandon pursuing the claims as a collective action, despite its conditional certification.  (ECF

4

No. 95).[3]  Plaintiffs contend that they could not possibly have met the deadline initially set for amendment, January 24, 2020 (*see* ECF Nos. 19 and 20), because the court did not grant conditional certification until May and the opt-in period did not close until that fall.  Plaintiffs therefore argue that "good cause exists" under Rule 16(b)(4) to grant this amendment as "amendment 'could not have been reasonably brought in a timely manner.'"  (ECF No. 95, at 5) (citing *NH Special Events, LLC v. Franklin Exhibs. Mgmt. Grp., LLC*, No. 8:19-cv-01838-PX, 2019 WL 347699, at *4 (D.Md. Oct. 14, 2020)).

Plaintiffs then contend that amendment is similarly appropriate under Fed.R.Civ.P. 15(a)(2), which provides for amendment "when justice so requires."  They argue that amendment should be "freely given" where there is no evidence of "undue

---

[3]  The motion recites that "The proposed First Amended Complaint does not add Mr. Morrison as a named plaintiff."  (ECF No. 95, at 4 n.6).  Six days later, counsel for Plaintiffs filed a motion to withdraw as attorney for Mr. Morrison noting that he had not appeared at his deposition on November 13, 2020, or his rescheduled one on November 20.  Counsel had earlier sent him the required letter.  (ECF No. 96).  The motion to withdraw was granted by a letter/order that advised Mr. Morrison that he would be proceeding *pro se* unless or until new counsel appeared on his behalf.  (ECF No. 97).  On December 22, 2020, counsel filed another motion to withdraw, this time as to opt-in plaintiff Ms. Smith, similarly noting her failure to appear at either her originally scheduled, or rescheduled, deposition.  (ECF No. 106).  This motion was granted by letter/order as well, notifying Ms. Smith of her *pro se* status.  (ECF No. 107).  In their reply, Plaintiffs' counsel state, "Because counsel no longer represents Ms. Smith, counsel can no longer advocate for her inclusion in the proposed Amended Complaint."  (ECF No. 117, at 5 n.4).

delay, bad faith or dilatory motive on the part of the movant." (ECF No. 95, at 7) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   They contend that "there is no undue prejudice to Transdev, the plaintiffs who joined the lawsuit by filing consents have already been participating as full parties to this case, and the proposed Fist Amended Complaint adds no new claims or legal theories."   The addition of these Plaintiffs as named parties would also "promote judicial economy," they assert.   While they concede that Transdev intends to move to decertify the collective, they argue they "are confident" that such a motion would fail.   This amendment would therefore "obviate[] the need for lengthy and resource-intensive motions practice by converting the case from a collective action into a simple group case with 15 plaintiffs now." (*Id.*, at 1-2,7).

Transdev opposes and first argues that, despite Plaintiffs claims that the opt-in Plaintiffs assert the "same core claims," their wholesale conversion into named Plaintiffs would have them assert state statutory and common law claims that were not raised by the purported collective, but only by the named Plaintiffs individually.[4]   Transdev argues "sever[e]" prejudice on this point:

---

[4] Defendant notes that the amended complaint also seeks to make factual changes to ¶¶ 11-14 of the complaint and removes its jury demand.   The factual changes referenced are 1) a correction of Ms. McCoy's dates of employment from "August 2016 to February 2018" to "January 2017 to May 2018," 2) the removal of an apparent

> Had Transdev known that the FLSA opt-in
> Plaintiffs were proceeding on state and common
> law claims, it would have adopted a different
> strategy regarding written discovery and
> depositions.  For example, Transdev would have
> sought more fulsome discovery concerning: (1)
> whether opt-in Plaintiffs contend that they
> were either not paid on a regular basis, or
> not paid upon termination pursuant to the
> Maryland Wage Payment and Collection Law
> claim, and (2) their alleged third-party
> beneficiary status under Transdev's contracts
> with Maryland and Baltimore City pursuant to
> the breach of contract claims.

(ECF No. 108, at 4).

Secondly, Transdev argues that the opt-in Plaintiffs have *not* fully participated in discovery.  It argues that "it was unable to complete the properly noticed but recently cancelled depositions of four named and opt-in plaintiffs by the December 15, 2020 discovery deadline."  It implies that these failures evidence bad faith: "Each cancellation occurr[ed] after the Court's denial of Plaintiffs' motion to amend Scheduling Order to extend the discovery deadline."  (ECF No. 108, at 5-6).  Plaintiffs note in their reply, filed on January 5, 2021, however, that the two opt-in Plaintiffs in question are Mr. Morrison and Ms. Smith, who are no longer represented by counsel.  Plaintiffs also address the

---

gap in Ms. Jones's employment with Transdev, 3) the removal of reference to paratransit work from Ms. Jones's allegations, and 4) correcting Mr. Miller's end date of employment from "November 2017" to "August 2017."  (*See* ECF No. 95-2, ¶¶ 11-14).  The waiver of jury demand will change little as Transdev is unwilling to do the same.  (ECF No. 108, at 1 n.2).

issues preventing the depositions of the named Plaintiffs but, point out, "none of this has any bearing whatsoever on Plaintiffs' Motion." (ECF No. 117, at 4-5).

Third, Transdev contends, as an indication of prejudice, that "opt-in plaintiffs could impact potential damages, and thus Transdev's defense strategy and valuation of this case." It points out that the opt-in Plaintiffs, in seeking to become named Plaintiffs, now seek compensation not just for violations of federal minimum wage laws, but violations of Maryland and Baltimore living wage laws as well. It, however, does not explain how a potential increase in damages fits within the standards for amendment and joinder.[5]

Finally, Transdev argues that Plaintiffs have demonstrated a lack of due diligence or bad faith in moving to amend the complaint when they have. It concedes that Plaintiffs could not have moved to amend the complaint in this fashion until the close of the opt-in period on September 8, 2020. At this point, however, Transdev

---

[5] Transdev cites to *Fid. & Guaranty Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ-13-0040, 2016 WL 158512, at *22 (D.Md. Jan. 12, 2016). But Plaintiffs point out in reply that this case is inapposite to Transdev's theory that a change in potential damages as a case unfolds can constitute prejudice. (ECF No. 117, at 5). In that case, Judge Quarles denied a motion to amend an already amended complaint because the plaintiff had attempted to add a new legal theory to support a claim that had already been found lacking in the first amended complaint. Insofar as the case provides an example where delay and lack of good cause present a high potential for prejudice, it is relevant. It has absolutely nothing to do with added damages in such a scenario, however.

argues they "were aware of the universe of opt-in plaintiffs" and should have filed their motion promptly. Instead they waited months and filed it on December 8, without explanation. (ECF No. 108, at 7). Plaintiffs provide no such subsequent explanation in their reply other than to say Transdev's focus on this "brief period" is misplaced. (ECF No. 117, at 6). Transdev also argues that undue delay and a lack of due diligence is evident in Plaintiffs' failure properly to bring the state statutory and common law claims on behalf of prospective opt-in Plaintiffs.

Regarding the alleged lack of notice of the added non-FLSA claims, Transdev argues that Plaintiffs should have clearly laid out that such claims extend to all "similarly situated" Plaintiffs by bringing them as a class action claim in the complaint. *See* Fed.R.Civ.P. 23. Transdev argues this "hybrid collective and class action" is the proper mechanism to add such claims to an FLSA collective in the first instance. (ECF No. 108, at 7) (citing *Strange v. Prince George's Cty.*, Civil Action No. TDC-19-2761, 2020 WL 4350373, at *4 (D.Md. July 29, 2020)). This purported failure, Transdev asserts, is either a product of carelessness or a "tactical decision" that attempts "belatedly [to] increase potential damages" related to these new claims. (*Id.*). Plaintiffs counter that class action is a nonmandatory mechanism for bringing claims and is not the only way for an opt-in Plaintiff to join in state law claims. (ECF No. 117, at 4 n.3).

9

Ultimately, Transdev argues that because Plaintiffs have failed to show good cause for modifying the scheduling under Fed.R.Civ.P. 16(b), it is not necessary to analyze the motion under Fed.R.Civ.P. 15(a).  (ECF No. 108, at 7-8) (citing *AirFacts, Inc. v. De Amezaga*, No. DKC 15-1489, 2016 WL 4089568 (D.Md. Aug. 2, 2016)).  It notes that Plaintiffs, moreover, fail to treat their own claims under the standard governing permissive joinder of parties that is applicable given that the decertification stage has not been reached.  (*Id.*, at 8) (citing *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, Nos. WMN-10-2336, 2015 WL 628968, at *7 (D.Md. Feb. 11, 2015) (denying amendment under Fed.R.Civ.P. 20 where amendment would produce "eleven mini-trails of marginally related claims" and where an intended motion to decertify was found likely to succeed, if filed, but granting the right to brief the latter)).

On January 28, 2021, Plaintiffs filed a motion to "correct" the proposed first amended complaint.  In particular, they cite "two errors" in that filing.  The first alleged error is in identifying Plaintiff Christina Collins as a "non-emergency medical transportation" worker when she actually "performed paratransit work under the Transdev-Davi State Subcontract."  The correction aims to align her testimony during deposition and in response to interrogatories with the complaint.  Second, Plaintiff Tyree Miles argues that a newly discovered document produced during discovery reveals that his "dates of employment . . . were from

10

late September [2016] through April [2017],[6] and not earlier than
that as previously alleged."  (ECF No. 126).

Transdev opposes the motion, arguing that it is really a
second motion to amend the complaint in disguise and that
Plaintiffs should have sought its consent before filing it under
Local Rule 103(6)(d).  As such, Transdev incorporates its arguments
against the first motion and argues that such an "editing error"
is further evidence of "careless[ness] in developing [their
claims]" and supports denial.  (ECF No. 129) (citing *Tawwaab v.
Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768-69 (D.Md. 2010)
(finding that the "factors" to be considered under this standard
are "danger of prejudice to the non-moving party, the length of
delay and its potential impact on judicial proceedings, the reason
for the delay, and whether the movant acted in good faith.")).
Moreover, the allegedly, newly "discovered" evidence, animating
the correction of Mr. Miles's allegations, does not actually
contain employment dates, Transdev points out, and Plaintiffs, it
argues, cannot otherwise account for the delay in correcting these
allegations.  (*Id.*) (citing ECF No. 129-1).  Plaintiffs filed a
reply to their motion to "correct" on February 25.  (ECF No. 135).

---

[6] The second proposed amended complaint lists the correct date
range of September 2016 through April 2017.  (*See* ECF no. 126-3,
at ¶ 15), but in what Plaintiffs have conceded is a compounding
and "particularly unfortunate typographical error," they put
"2017" and "2018" in their memo in support of this second motion
to amend by mistake.  (ECF No. 135, ¶ 6 n.1).

## III. Standards of Review

Attempts to amend the complaint to add parties beyond an amendment deadline invariably need to pass muster under both Fed.R.Civ.P. 15 and 16, particularly when they occur late in the proceeding.  As this court has said:

> Typically when parties move to amend the pleadings at this stage in the proceedings, in addition to Rule 15(a) they must first satisfy Rule 16(b)(4), which requires parties to show "good cause" why they have not met the deadline set in the scheduling order for amendment of pleadings and joinder of parties.  *See Aloi v. Moroso Inv. Partners, LLC,* No. DKC 11-2591, 2013 WL 6909151, at *3-*4 (D.Md. Dec.31, 2013) (finding that when the deadline in the scheduling order for amendment of pleadings had "long since passed . . . the parties must do more than satisfy the liberal standard of Rule 15(a); they must first meet the mandates of Rule 16(b)(4)").

*Panowicz v. Hancock*, No. DKC 11-2417, 2015 WL 4231712, at *6 n.3 (D.Md. July 9, 2015) (finding that Fed.R.Civ.P. 16(b)(4) did not apply only because the "scheduling order does not provide a deadline for amendment of the pleadings and joinder of parties.").

A party may amend a pleading as a matter of course once within twenty-one days of serving it.  Fed.R.Civ.P. 15(a)(1).  Once the right to amend as a matter of course expires, as it has in this case, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard . . . must be satisfied to

12

justify the leave to amend." *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings*, No. ELH-12-0752, 2015 WL 575362, at *4 (D.Md. Feb. 10, 2015) (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). Under normal circumstances, denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986); *see also Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.2d 369, 379 (4th Cir. 2012).

In this context, however, where an amendment would require a scheduling modification, the standards of this rule are in tension with those under Fed.R.Civ.P. 16(b). This court has explained:

> While a motion to amend a complaint after the deadline in a scheduling order triggers Rule 15(a) concerning liberal amendment of pleadings, it also triggers Rule 16(b) governing modifications to a scheduling order. *See also Daso v. The Grafton Sch., Inc.,* 181 F.Supp.2d 485, 488 (D.Md. 2002). The court recently noted in *Rassoull v. Maximus, Inc.,* 209 F.R.D. 372, 373 (D.Md. 2002) that the standards for satisfying Rule 15(a) and Rule 16(b) are at odds. While Rule 15(a) states that "leave shall be given freely when justice so requires," Rule 16(b) states that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." Noting that neither the Supreme Court nor the Fourth Circuit has dealt decisively with the interplay of the two rules when a motion to amend is filed after the deadline set in a scheduling order has passed, the

court followed the two-step analysis set forth in *Marcum v. Zimmer,* 163 F.R.D. 250, 254 (S.D.W.Va. 1995). *See Rassoull,* 209 F.R.D. at 373. Under that framework, once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a). *Id., citing Marcum,* 163 F.R.D. at 254.

In discussing the good cause standard, the court stated that

> the Rule 16(b) analysis is less concerned with the substance of the proposed amendment. Instead, Rule 16(b)'s "good cause" standard focuses on the timeliness of the amendment and the reasons for its tardy submission. Because a court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 375-376 (D.Md.1999), *quoting Gestetner v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D.Me. 1985), a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.

> The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant. Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." [*W. Va.*] *Housing Dev. Fund v. Ocwen Tech*[.] *Xchange, Inc.,* 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving

14

> party's reasons for seeking
> modification. *If that party was not
> diligent, the inquiry should end.*"
> *Marcum,* 163 F.R.D. at 254, *quoting
> Johnson* [*v. Mammoth Recreations,
> Inc.*], 975 F.2d [604] at 609 [(9th
> Cir.1992)].

> *Rassoull*, 209 F.R.D. at 373-74.

*Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618,
631 (D.Md. 2003).

Refuting Defendant's discussion of the relevant standards,
Plaintiffs argue that they have satisfied Rules 15 and 16 and that
Fed.R.Civ.P. 20 does not apply to their motion at all.[7]  The case
cited by Defendant, *Faust*, they argue, is inapposite because the
motion came in a "very different procedural posture," "four years"
after the deadline for joinder, "well beyond the discovery
deadline, and following the Court's denial of class
certification." (ECF No. 117, at 7).  Despite those differences,
the standard set out in the case is still applicable.  This motion
also comes well after the deadline to join parties and well beyond
the discovery deadline.  It is correct that *Faust* addressed the
motion to amend after denying class certification.  Nonetheless,

---

[7] Plaintiffs argue that the rule carries little weight
relative to the other standards.  The standard is a liberal one,
they point out, and all the claims surround Transdev's alleged
failure to pay its employees the required minimum wage and present
the same questions of law and fact ("whether they are properly
considered employees or independent contractors, whether they were
properly compensated, and whether Transdev is liable as their joint
employer").  (ECF No. 117, at 9).

the rule remains applicable, particularly because the defendant in *Faust* similarly expressed an intent to file a subsequent motion to decertify.  2015 WL 628968, at *2.

Fed.R.Civ.P. 20(a) provides, in pertinent part:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action

The rule "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).  Courts liberally construe the first requirement and find that "claims arise from the same transaction or occurrence if they have a logical relationship to one another." *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F.Supp.2d 375, 382 (D.Md. 2011) (citing 7 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane ("Wright & Miller"), Federal Practice and Procedure § 1653 (3d ed.)). Similarly, the second requirement "does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact." *Id.* at 384 (quoting Wright & Miller, § 1653) (emphasis added in *Stephens*).

16

## IV.  Analysis

Defendant's opposition to amendment centers around the claim that it "was not on notice of the opt-in Plaintiffs' state [statutory] and common law claims" and did not fully explore information relevant to these claims in deposing the opt-in Plaintiffs.  While Plaintiffs could have chosen to bring their state law claims as a class action, they were not required to do so.  After all, a class action, if certified, would have opened Defendant up potentially to a much larger group of prospective plaintiffs, as they would have had expressly to opt-*out* of the case under Fed.R.Civ.P. 23 to avoid automatic inclusion. Plaintiffs argue that labeling these "individual actions" should have signaled to Defendant only that they were *not* seeking class certification and that its liability was limited to any potential opt-*in* Plaintiffs. (*See* ECF No. 117, at 4 n.3).  Indeed, whether class certification is proper is entirely divorced from the relevant consideration here[8]: whether good cause for a modification

---

[8] *See Bartleson v. Winnebago Indus., Inc.*, No. C02-3008-MWB, 2003 WL 22427817, at *3 (N.D. Iowa Oct. 24, 2003) ("The defendant argues at length that the proposed amendment would be futile because certification of the state-law claim under Rule 23 would be inappropriate.  That issue is not presently before the court. Whether the plaintiffs can make the necessary showing for certification of their state-law claim under Rule 23 is an issue that is separate and distinct from whether they should be permitted to amend their Complaint to assert the state-law claim in the first instance.").

of the scheduling order exists — itself centering around whether Plaintiffs exercised proper diligence in pursuing their claims and whether Defendant was on notice of the potential for the opt-in Plaintiffs to join in the non-FLSA claims.[9]  Defendant's citation to cases in which plaintiffs *did* pursue class certification under Fed.R.Civ.P. 23 therefore is misplaced.

Defendant is incorrect that judicial economy is not a relevant consideration.  Not only is it inherent in the considerations of "convenience" under Fed.R.Civ.P. 20, but it also has been included in analyzing whether "good cause" exists to allow amendment under Fed.R.Civ.P. 16(b).  *See Scott v. Chipotle Mex. Grill*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) ("because plaintiffs' proposed new claims

---

[9] The Second Circuit, among others, has highlighted these as two central inquiries for judging prejudice when state law claims are sought to be added for FLSA opt-in plaintiffs, along with whether assertion of the new claim would "require the opponent to expend significant additional resources," "significantly delay the resolution of the dispute," or "prevent the plaintiff from bringing timely action" elsewhere.  *Ruggles v. Wellpoint, Inc.*, 687 F.Supp.2d 30, 35 (N.D.N.Y. 2009) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 274, 284 (2ᵈ Cir. 2000) and citing *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2ᵈ Cir. 1986) and *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 103 (2ᵈ Cir. 1986)). Other jurisdictions encountering this issue have begun to follow suit.  *See e.g. Turner v. BFI Waste Servs., LLC.*, 292 F.Supp.3d 650, 654 (D.S.C. 2017) (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001) and *Hicks v. T.L. Cannon Corp.*, 35 F.Supp.3d 329 (W.D.N.Y. 2014) (both also relied on by Plaintiffs, ECF No. 117, at 3)) ("It is also persuasive that a number of courts have held that where opt-in plaintiffs have opted in to FLSA claims, those plaintiffs are also a party to any state law claims filed in the new hybrid suit.").

rely on essentially the same facts as were set out in the original complaint, forcing plaintiffs to institute a new action against the ... defendant[ ] would run counter to the interests of judicial economy.") (internal quotation marks omitted); *see also Ruggles*, 687 F.Supp.2d at 35, discussed in the footnote above, (considering if amendment produced any potential "significant" delays to litigation).  As such, as Plaintiffs argue, there seems little reason to invite an entire motions practice over decertification if Plaintiffs no longer seek use of the collective action mechanism, particularly given their belief that such a motion would fail anyway.  (ECF No. 95, at 1-2).

Some courts have found that the opt-in forms should have put a defendant on notice of the potential inclusion of these claims. A case cited by Plaintiffs, *Williams v. Epic Sec. Corp.*, 358 F.Supp. 3d 284, 294 (S.D.N.Y. 2019), demonstrates the point.  In that case, the decision to rule on a motion to amend was deferred until after trial.  The court ultimately found that the "direct testimony via written affidavit" submitted along with a declaration from every opt-in plaintiff was considered sufficient involvement in discovery.  Moreover, the consent forms in that case were found to put defendants on notice that additional related claims might be brought by the opt-in plaintiffs. *Williams*, 358 F.Supp.3d 284, 294 & n.8 (S.D.N.Y. 2019) (quoting *Hicks,* 35 F.Supp.3d at 329) (finding the language of the consent forms

"sufficiently broad to 'encompass the state law claims brought in the lawsuit'" because they stated, "I hereby consent to the prosecution of any claims I may have under the Fair Labor Standards Act for wages, back pay, liquidated damages, costs and attorney's fees, and *other relief* against defendants."). The form used in this case is not as clear, however.

The statutory text supports granting an FLSA opt-in broad effect. In *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (per curiam), the Eleventh Circuit explained:

> The statute says, "[n]o employee shall be a party plaintiff to any such *action* unless he gives his consent in writing to become such a party . . . ." 29 U.S.C. § 216(b) (emphasis added). That plain language of § 216(b) indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole. The statute does not indicate that opt-in plaintiffs have a lesser status than named plaintiffs insofar as additional claims are concerned. To the contrary, by referring to them as "party plaintiff[s]" Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.

*See also Mickles on behalf of herself v. Country Club, Inc.* 887 F.3d 1270, 1278 (11th Cir. 2018) (citing favorably to *Prickett*); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 344 (D.Md. 2012) (explaining that *Prickett* stands for the proposition that an FLSA opt-in plaintiff "did not need to file a new consent form when additional claims were added.").

The opt-in form here provides that the person consents to be a plaintiff in the "lawsuit" and "I also consent to join any separate or subsequent action."  Because of such language and the language of §216(b) itself, Defendant was on notice that these state statutory and common law claims could be brought by the opt-in Plaintiffs as parties to the "action."  *See* 29 U.S.C. § 216(b) ("No employee shall be a *party plaintiff* to any such action unless he gives his consent in writing.") (emphasis added).  Where such opt-in Plaintiffs are in the certification process is irrelevant to whether a "party becomes a plaintiff," as certification (like class action) has been deemed simply a "court-developed case management tool that is not mandatory."  *See Mickles*, 887 F.3d at 1278 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) and *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)).

Furthermore, the lack of initial notice to Defendant of these added claims would not mean necessarily that their inclusion is unduly prejudicial.  After all, there is little, if any, daylight between the non-FLSA and FLSA claims; Defendant does not satisfactorily explain how it is in anyway disadvantaged in challenging them, having deposed the named and opt-in Plaintiffs on the substantively similar FLSA claims, and having questioned the former on the state, local and common law claims, as well.

21

As to the MWPCL claims, Defendant argues that it would have asked the opt-in Plaintiffs "whether [they] contend that they were either not paid on a regular basis, or not paid upon termination." (ECF No. 108, at 4). Presumably, this is in reference to the fact that, under the state law, employers are required to pay all wages for work performed "before the termination of employment, *on or before the day on which the employee would have been paid wages if the employment had not been terminated*." Md. Code Ann., Lab. & Empl. § 3-505. Although Defendant attempts to differentiate the substance of the MWPCL claims from the FLSA claims in this way, nowhere does it attempt to spell out the other (if any) substantive differences between the MWPCL, MLWL, and MWHL as variants of Maryland's minimum wage laws. More importantly, Plaintiffs allege that they were *never* compensated fully for the work they performed, so whether this failure was regular or at the time of termination is irrelevant to whether a violation has, in fact, occurred. This is a clear attempt to create a separate element of proof for the state law claims where none exists.

In comparing the MWHL and FLSA, this court has explained:

> The MWHL is the state statutory equivalent of the FLSA. *Watkins v. Brown,* 173 F.Supp.2d 409, 416 (D.Md. 2001). Both the MWHL and the FLSA have similar purposes, almost identical definitions of "employer," and the MWHL contains internal references to the FLSA. *Id.* The requirements under the MWHL are so closely linked to the FLSA that "[p]laintiffs' claim under the MWHL stands or

> falls on the success of their claim under the
> FLSA." *Turner v. Human Genome Sci., Inc.,* 292
> F.Supp.2d 738, 744 (D.Md. 2003).

*McFeeley v. Jackson Street Ent., LLC.,* 47 F.Supp.3d 260, 267 n.6

(D.Md. 2014). Moreover, while the Maryland minimum wage was higher

than the federal for the relevant period,[10] whether a violation has

occurred depends on exactly the same facts, as the mechanics of

these three laws are the substantively the same, even if the dollar

amounts are not. *McFeeley* explains this overlap:

> The Plaintiffs, as employees, are entitled by
> law to receive minimum wage under the FLSA and
> MWHL. Pursuant to the FLSA, "an employer must
> pay an employee an hourly wage no less than
> the federal minimum wage[,]" *Butler,* 2013 WL
> 5964476, at *6 (*citing* 29 U.S.C. § 206(a)(1)),
> and overtime pay for each hour worked in
> excess of forty hours per week. *Roman,* 970
> F.Supp.2d at 412 (*citing* 29 U.S.C. §
> 207(a)(1)). "The MWHL similarly requires that
> employers pay the applicable minimum wage to
> their employees and, in [§§ 3-415 and 3-420 of
> the Labor and Employment Article], that they
> pay an overtime wage of at least 1.5 times the
> usual hourly wage" for each hour worked in
> excess of forty hours per week. *Id.* (quoting
> *Friolo v. Frankel,* 373 Md. 501, 513, 819 A.2d
> 354 (2003)) (internal quotation marks
> omitted).

*Id.* at 275-76.

---

[10] Maryland's minimum wage was $8.75, effective 7/1/2016, $9.25, effective 7/1/2017, and $10.10, effective 7/1/2018. https://www.dllr.state.md.us/labor/wages/wagehrfacts.shtml. Similarly, as Plaintiffs point out in their motion, "The MLWL requires that certain state contractors pay a higher 'living' wage to individuals who work under certain state contracts, including individuals who may work for a subcontractor." (ECF No. 95, at 3 n.3) (citing Md. Code Regs. §21.11.10.05(D)).

Review of Maryland caselaw confirms this reading and that a violation of the MWPCL would equally make out a violation of the MWHL and FLSA in this context. *See Mould v. NJG Food Serv., Inc.*, JKB-13-1305, 2014 WL 1430696, at *2 (D.Md. Apr. 11, 2014) ("With regard to the interactions between the MWPCL and the MWHL, in *Friolo v. Frankel,* the Maryland Court of Appeals held that plaintiffs may sue under both the MWPCL and the MWHL. [373 Md. at 515] ('Clearly [plaintiff] was entitled to sue under both statutes [the MWPCL and the MWHL] to recover any overtime pay that remained due after termination of her employment.')"); *see also Pinnacle Grp., LLC v. Kelly*, 235 Md.App. 436, 453 (2018) (quoting *Marshall v. Safeway, Inc.*, 437 Md. 542, 560 (2014) and *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654-55 (2014) (same)); *Guerra v. Teixeira,* No. TDC-16-0618, 2019 WL 330871, at *5 (D.Md. Jan. 25, 2019) (citing *Campusano v. Lusitano Constr. L.L.C.*, 208 Md.App. 29, 36 (2012) ("finding the same test for employee status applicable to the FLSA and MWHL applies to claims under the MWPCL"); *Qun Lin v. Cruz*, 247 Md.App. 606, 634-35 (2020) (quoting *Newell v. Runnels*, 407 Md. 578, 649 (2009) and *Frankel*, 373 Md. at 513) ("Both the FLSA and the MWHL require, among other things, that an employer 'pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that [an] employee works during one workweek.' The MWPCL 'does not concern the amount of wages payable but rather the duty to pay whatever wages are due on

24

a regular basis and to pay all that is due following termination of the employment.').

Plaintiffs, of course, will not be able to recover separately for the same wages more than once: "[E]ven if Plaintiff prevails on [his MWPCL] and the related MWHL and FLSA counts [], he will only be able to recover once for damages from Defendant['s] failure to pay wages as required by law." *Mould*, 2014 WL 2768635, at *6 n.3. Potential multipliers, however, may differ depending on which law applies.

Similarly, despite a lack of caselaw on the matter, the MLWL, by its plain text and as discussed, only increases the applicable minimum wage for workers covered by "State contract for services." *See* Md. Code Ann., State Fin. & Proc. § 18-103; *Maryland's Living Wage Frequently Asked* Questions, https://www.dllr.state.md.us/labor/livingwagefaqs.pdf (last accessed: March 10, 2021). Even if this law is assumed to apply, it requires no added proof to show a violation beyond requiring even higher wages for those protected by it.

Having deposed all the opt-in Plaintiffs on their wages and hours worked during the relevant period in anticipation of the FLSA claims (except the two no longer represented by counsel), Defendant has been given an opportunity to explore all the facts it needs to defend itself on these analogous Maryland state law claims as well. Defendant only points to a single nuance of the

MWPCL, but fails to explain why that nuance ultimately matters.[11]
Although it argues it would have deposed the opt-in Plaintiffs
differently on these claims had it known of their potential
inclusion, it has failed to explain how such a strategy would have
differed in any meaningful way from the strategy it did employ.
Similarly, it fails to explain how the purported failure to ask
the opt-in Plaintiffs questions about *when* the alleged failure to
pay full wages took place could adversely impact their ability to
raise a defense to the MWPCL claims in concrete terms.

Equally unavailing is Defendant's reference to the questions
it claims it would have asked the opt-in Plaintiffs regarding their
common law claims.  The contract claims are predicated, in part,
on Plaintiffs "third-party beneficiary status under Transdev's
contracts" with the State and the City; Defendant argues it would
have asked those who opted-in as to their "status" as such.  (ECF
No. 108, at 4).  To frame the question in this way, however,
incorrectly suggests that any given Plaintiff's "status" under
these contracts requires an individualized determination.  The

---

[11] In *Mould*, 2014 WL 1430696, at *1, Judge Bredar explained
that the Court of Appeals of Maryland has found that MWPCL "permits
a private cause of action not only if an employer fails to pay
wages with § 3-502 or §3-505, but also if an employer makes "a
deduction from the wage of an employee in violation of § 3-503."
(citing *Marshall*, 437 Md. at 542).  As mentioned, since the claim
here is that Transdev never paid them the proper wages at all, it
is entirely unclear how this novel facet of the state law is
relevant.

breach of contract claims were predicated, as Plaintiffs' motion explains, on the assertion that the "Transdev-Davi Subcontract" made the drivers third-party beneficiaries under the contracts' "living-wage provisions." (*Id.*, at 3 n.5).  The original complaint makes clear that this allegation argues simply that "The Transdev-City NEMT Contract required that Transdev comply with the living wage provisions of the Baltimore City Code, including payment of living and overtime wages."  (ECF No. 1, at 20).  In that sense, the allegation lives or dies on whether the Transdev's employees involved in this work were protected, by these living wage protections, as a whole and as parties to a city or state contract. Any individual nuances of each Plaintiffs' job as a driver are irrelevant to this question.  Defendant has had ample opportunity to depose the named Plaintiffs on this issue, and so the failure to depose *all* opt-in Plaintiffs on this claim is not overly prejudicial.

The direct claims under the City living wage provisions, like the derivative contract claims and the state and federal minimum wage claims, all come down to two central questions: 1) did Transdev pay its employees the proper wages for work they performed generally, and 2) did it pay those employees, who worked more than 40 hours in a given work week and were qualified for overtime pay, the overtime rate of 1.5 times the minimum wage they were due.  It is unclear if the alleged, direct violation of the City provisions

carry with it any additional potential damages. *See Gaither v. Davi Trans. Servs., LLC.*, No. ELH-18-1447, 2020 WL 2614783, at *9 (D.Md. May 22, 2020) ("I decline to award damages under the Baltimore City Code.  Plaintiffs candidly concede that they are unaware of any court decision "examining the enforceability of the Baltimore City Code's living wage ordinance . . . through the MWPCL."). All these claims require the same central proofs that Defendant had the opportunity to explore in deposing the opt-in Plaintiffs, even if they sought only to ask questions in regard to the FLSA claims and not beyond.

Defendant argues that the fact that it is potentially liable under the additional causes of action for additional damages above and beyond those awarded under the FLSA is highly prejudicial. (ECF No. 108, at 6).  Indeed, Maryland wage claims do carry with them the potential for treble damages, as opposed to only double under the FLSA, even while attorney's fees and costs are included under either statute. *Gaither*, 2020 WL 2614783, at *10 (citing, among others, *Villatoro v. CTS & Assocs., Inc.*, DKC-14-1978, 2016 WL 2348003 (D.Md. May 4, 2016)).  But courts have said that added damages alone do not constitute prejudice; the fate of the motion depends instead on the diligence of the party in seeking to amend and whether the nonmoving party has had an opportunity to respond. *See e.g.*, *Target Corp v. LCH Pavement Consultants, LLC.*, 960 F.Supp.2d 999 (D.Minn. 2013) (granting a motion to add a claim of

28

punitive damages after the amendment deadline as its basis was developed during discovery); *Achey v. Crete Carrier Corp*, No. 07-CV-3592, 2009 WL 101843, at *2-*3 (Jan. 14, 2009) (quoting *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 106 F.Supp.2d 737. 745 (D.N.J. 2000) (noting "[t]he test for prejudice is whether the non-moving party will be denied 'a fair opportunity to defend and offer additional evidence' to address the amendment" and finding no prejudice from the addition of new damage claims to the complaint).

While the burden to show good cause under Fed.R.Civ.P. 16(b) is on the moving party, under Fed.R.Civ.P. 15(a) "[t]he burden of showing prejudice falls on '[t]he party opposing amendment.'" *Class Produce Grp., LLC. v. Harleysville Worchester Ins. Comp.*, No. SAG-16-cv-3431, 2018 WL 5785664, at *3 (D.Md. Nov. 5, 2018) (quoting *Atl. Bulk Carrier Corp. v. Milan Exp. Co., Inc.*, No. 3:10cv103, 2010 WL 2929612 (E.D.Va. July 23, 2010)). Although the potential for damages under the City provisions (or contract claims) may be unclear, Defendant has failed to carry its burden to show how such a potential increase in damages is prejudicial — these damages flow directly from claims that it was on notice could be brought by any prospective opt-in.

On the other hand, Plaintiffs *have* carried their burden to show good cause under Fed.R.Civ.P. 16(b) to amend the scheduling order.  As they rightfully explain:

> [T]he initial Scheduling Order set the
> amendment deadline at January 24, 2020. ECF
> 19, 20. The Court granted Plaintiffs' motion
> to conditionally certify this suit on May 11,
> 2020. ECF 43. The opt-in period did not close
> until September 8, 2020. Plaintiffs could not
> have amended the complaint to include
> plaintiffs who joined the suit by opting in
> prior to January 24, 2020, because those
> plaintiffs were unknown prior to the Court-
> facilitated Notice. The amendment deadline
> fell nearly four months before the Court
> granted conditional certification and nearly
> nine months before the close of the opt-in
> period. Accordingly, this amendment "could
> not have been reasonably brought in a timely
> manner." *NH Special Events*, [2019 WL 347699],
> at *4.

(ECF No. 95, at 5). This leaves only the period between September

8, 2020, to the filing of this motion on December 8. While

Plaintiffs' description of this period as "brief" may be

overstated, a delay of a few months in bringing this motion is

excusable, particularly as efforts to schedule depositions were

ongoing. Plaintiffs have shown good cause for a scheduling

modification and that any prejudice to Defendant — if the opt-in

Plaintiffs are converted to named Plaintiffs and allowed to bring

the same state statutory and common law claims — would be minimal.

Having cleared the first two standards, the motion needs to

pass muster under Fed.R.Civ.P. 20 as well, despite Plaintiffs'

assertion that it does not. Nevertheless, Plaintiffs rightly

suggest the rule carries little weight here. These claims all

surround an alleged policy by Transdev, as an employer, improperly

30

to treat its drivers as independent contractors and thereby pay them less than the law required.  These claims also arise out of common questions of fact and law because they revolve around the same alleged failures to pay the applicable minimum wages or overtime owed.  Moreover, the factual changes made to paragraphs eleven through twelve (highlighted by Defendant in opposition) are minor and, as explained more fully below, are a byproduct of Transdev's failure to produce a full set of employment records during discovery.  These changes appear to be nothing more than an attempt to correct the Plaintiffs' imperfect recollection of dates with discovery having shown them to be inaccurate.  Beyond noting these attempted changes, moreover, Defendant does not even attempt to argue they are prejudicial.

The motion for leave to amend will be granted.

## V. Motion to Correct the Motion to Amend

Defendant's arguments made in opposition to the initial motion to amend are reasserted in its opposition to this second motion to correct/amend.  They fail for the same reasons stated above.  Moreover, the purported editing error as to Ms. Collins's claims is minor and better aligns the complaint with the facts developed during discovery.  Defendant fails to explain how such a correction would prejudice it at all.  Its only argument is that the error shows Plaintiffs' carelessness.  Even so, Plaintiffs are correct in reply that this is not the kind of gross carelessness

31

that shows a lack of diligence or that would otherwise unduly prejudice the non-moving party.  (ECF No. 135, ¶ 3) (discussing *Tawwaab*, 729 F.Supp.2d at 769).

As to the second, purported error, Plaintiffs give ample justification for their initial lack of clarity around the facts in this case.  They report they based their allegations involving Mr. Miles in the original complaint on the fact that he "initially recalled working from late summer or early fall 2015 until summer or early fall 2016."  (ECF No. 135, ¶ 6) (referencing ECF No. 1, ¶ 16).  The document that Mr. Miles produced and which he alleges he discovered in January 19, 2021, when "looking through old emails," references an inquiry he made to an attorney about his employment status in this case, he asserts.  While Defendant is correct that the document contains no reference to actual dates, Mr. Miles reports in an declaration appended to Plaintiffs' reply that this jogged his memory as to his correct dates of employment as "I remember sending this inquiry to the attorney about six months after my employment . . . ended."  (ECF No. 135-1).

Plaintiffs lay their initial confusion on these dates at Defendant's feet.  Plaintiffs argue that the imprecision of their allegations is a byproduct of Transdev's failure to keep proper records on its employees:

> Because Transdev violated federal, state, local, and contractual recordkeeping requirements with respect to the Plaintiffs,

Plaintiffs have been left to cobble together information concerning their employment from their memories, whatever documents they might have had, and the very few documents bearing on dates of employment that Transdev produced in this case. None of the tens of thousands of pages Transdev produced include the project payroll reports Transdev was legally required to submit to the State of Maryland and City of Baltimore with respect to the work of Mr. Miles and all Plaintiffs—documents that would have made clear his precise dates of employment, hours of work, and pay. *See* Md. Code Regs. § 21.11.10.05(C) (requiring that employers covered by the Maryland Living Wage Law—as Transdev concedes it was with respect to its paratransit contract with the Maryland Transit Administration—submit to the state "a complete copy of" payroll records for its own employees as well as the employees of "[e]ach subcontractor"); Baltimore City Code, Art. 5, § 26-10(a)(requiring that employers covered by Baltimore City's living wage ordinance—as Transdev concedes it was with respect to its nonemergency medical transportation contract with the Baltimore City Health Department—submit to the city "complete copies of the project payrolls and the project payrolls of each subcontractor"). Nor did Transdev maintain the records required by the Fair Labor Standards Act or the Maryland Wage and Hour Law. *See* 29 U.S.C. § 211(c) ("Every employer subject to any provision of this Act . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment[.]"); Md. Code Ann., Lab. & Empl. § 3-424 (setting out the MWHL's recordkeeping requirements, including "the amount that is paid to each employee" and "the hours that each employee works each day and workweek").

(ECF No. 135, ¶ 5). Whether Transdev is in violation of these recordkeeping provisions need not be addressed, however.

33

Defendant has not produced full records of these former employees, and so Plaintiffs' apparent confusion regarding Mr. Miles' dates of employments is entirely understandable.  More importantly, as Plaintiffs argue, he should not be punished for his failure to keep paystubs from long ago, when Defendant cannot produce such records itself.  Whether the motion to amend is properly termed a simple motion to correct or viewed as a second, standalone motion to amend, Plaintiffs have shown that these fairly minor corrections to the complaint are merited, and Defendant has failed to explain how such corrections would prejudice it.  This motion to correct/amend will also be granted.

## VI. Conclusion

For the foregoing reasons, the motion for leave to file an amended complaint will be granted, as will the motion to "correct" the proposed first amended complaint.  A separate order will follow.

                              /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge
