**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

DANIELLE MCCOY, et al.,                   CIVIL ACTION NO. 1:19-CV-02137

             Plaintiff,                    JUDGE DEBORAH K. CHASANOW

v.

TRANSDEV SERVICES, INC.,

             Defendant.

**TRANSDEV SERVICES, INC.'S
MEMORANDUM IN SUPPORT OF ITS
CROSS MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFFS' PARTIAL
<u>MOTION FOR SUMMARY JUDGMENT</u>**

<u>/s/ Sunni R. Harris</u>
William A. Sherman, II (1005932)
Sunni R. Harris (admitted *pro ha vice*)
Dinsmore & Shohl LLP
801 Pennsylvania Avenue, N.W., Suite 610
Washington, DC 20004
T: 202.372.9100
F:  202.372.9141
William.Sherman@dinsmore.com
Sunni.Harris@dinsmore.com

*and*

Johner T. Wilson III (811235)
Jessica E. Chang (admitted *pro hac vice*)
Dinsmore & Shohl LLP
222 West Adams St., Suite 3400
Chicago, Illinois 60606
T: 312.372.6060
F:  312.372-6085
JT.Wilson@dinsmore.com
Jessica.Chang@dinsmore.com

*Attorneys for Transdev Services, Inc.*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF MATERIAL FACTS ...........................................................2

    A.  Transdev is a leading provider of paratransit and non-emergency medical transport in Maryland ..................................................................................................2

        *i.*   *BCHD Contract* ................................................................................2

        *ii.*  *MTA Contract* ..................................................................................3

    B.  Davi provided subcontracted services to Transdev ...............................................4

        *i.*   *BCHD Contract* ................................................................................4

        *ii.*  *MTA Contract* ..................................................................................5

    C.  Davi was a sophisticated transportation operation ................................................6

        *i.*   *Deandre Banks* .................................................................................7

    D.  MTA Plaintiffs often worked less than 13 consecutive weeks ..............................8

    E.  Davi hired and fired Plaintiffs .............................................................................10

        *i.*   *BCHD Contract* ..............................................................................10

        *ii.*  *MTA Contract* ................................................................................11

    F.  Davi trained BCHD Plaintiffs, and Transdev only trained MTA Plaintiffs as contractually required ...........................................................................................12

        *i.*   *Davi trained BCHD Plaintiffs* ......................................................13

        *ii.*  *Pursuant to the MTA Contract, Transdev trained the MTA Plaintiffs* ..............13

    G.  Davi set Plaintiffs hours, and MTA and BCHD (via Trapeze) created the manifests .......15

        *i.*   *BCHD Contract* ..............................................................................15

        *ii.*  *MTA Contract* ................................................................................16

    H.  Transdev was only involved in Plaintiffs' daily routine, if at all, to the extent required under the BCHD and MTA Contracts ..............................................17

        *i.*   *BCHD Contract* ..............................................................................17

   *ii.* *MTA Contract* .......................................................................................18

I. MTA Plaintiffs wore Davi Uniforms ................................................................21

J. Davi solely performed ordinary employer functions, such as payroll, and Davi and MTA provided equipment ................................................................................................21

**III. LEGAL STANDARD**...........................................................................................**23**

**IV. ARGUMENT** ..........................................................................................................**24**

 A. Plaintiffs are not Transdev's employees under the FLSA, MWHL, and MWPCL ...........24

   *i.* *Transdev did not direct, control, or supervise Plaintiffs* .....................................25

   *ii.* *Transdev did not hire or fire Plaintiffs* .................................................................27

   *iii.* *Davi did not enjoy a permanent relationship with Transdev*...............................28

   *iv.* *Transdev did not have direct or indirect ownership interest, or have control over Davi* ......................................................................................................................29

   *v.* *Plaintiffs performed work on the open road* .......................................................29

   *vi.* *Transdev did not share or allocate responsibility over functions ordinarily carried out by an employer and Davi independently handled payroll and taxes, and provided equipment and materials necessary to Plaintiffs* .................................30

 B. Monica Jones and Deandre Banks are precluded from coverage under the MWHL.........31

 C. MTA Plaintiffs are not Transdev's employees under the MLWL....................................32

 D. Most of the MTA Plaintiffs are precluded from coverage under the MLWL ..................33

 E. Plaintiffs are not intended beneficiaries under the MTA and BCHD Contracts................34

**V. OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT…..........39**

 A. Summary judgment for Plaintiffs is inappropriate because Transdev did not employ Plaintiffs jointly with Davi ................................................................................................39

 B. Summary judgment for Plaintiffs is inappropriate because they were not Transdev's employees ............................................................................................................................39

 C. Summary judgment for Plaintiffs is unwarranted because they fail to establish that they were not paid required minimum and overtime wages ....................................................39

 D. Summary judgment for Plaintiffs is inappropriate because the MWPCL inapplicable.....40

E. The evidence does not support that treble damages are appropriate under the MWPCL..43

F. Plaintiffs are not entitled to summary judgment because Transdev's conduct was not willful ...............................................................................................................................45

G. Plaintiffs are not entitled to summary judgment because liquidated damages are inappropriate under the FLSA and MWHL ....................................................................47

H. Plaintiffs are not entitled to summary judgment because they are not third-party beneficiaries under the MTA and BCHD Contracts. ........................................................47

**CONCLUSION** ..........................................................................................................................**48**

## TABLE OF AUTHORITIES

*Abdelnaby v. Durham D&M LLC,* Civil Action No. GLR-14-3905, 2015 U.S. Dist. LEXIS 76984, (D. Md. June 15, 2015) ................................................................................................................42

*Admiral Mortg. v. Cooper,* 357 Md. 533, 745 A.2d 1026, (Md. 2000) ........................................43

*Allen v. CitiMortgage, Inc.,* No. CCB-10-2740, 2011 U.S. Dist. LEXIS 86077 (D. Md. Aug. 4, 2011) ............................................................................................................................................36

*Amaral v. Cintas Corp.* No. 2, 163 Cal. App. 4th 1157, 78 Cal. Rptr. 3d 572 (2008) ................36

*Amaya v. DGS Constr., LLC,* Civil Action No. TDC-16-3350, 2019 U.S. Dist. LEXIS 142490 (D. Md. Aug. 19, 2019) ......................................................................................................................34

*Astra USA, Inc. v. Santa Clara Cty.,* 563 U.S. 110, 131 S. Ct. 1342 (2011)................................36

*Beam v. Dillon's Bus Serv.,* Civil Action No. DKC 14-3838, 2015 U.S. Dist. LEXIS 85388 (D. Md. July 1, 2015)...44

*Berry v. Transdev Servs.*, No. C15-1299-RAJ, 2017 U.S. Dist. LEXIS 58398 (W.D. Wash. Apr. 13, 2017) ......................................................................................................................................36

*Bourgeois v. Live Nation Entm't, Inc.,* 3 F.Supp.3d 423 (D. Md. 2014) ......................................42

*Bustos v. JCCS Servs.,* Civil Action No. DKC 15-1161, 2016 U.S. Dist. LEXIS 103028 (D. Md. Aug. 5, 2016)……….43

*Calderon v. GEICO Gen. Ins. Co.,* 809 F.3d 111, 130 (4th Cir. 2015) .....................................…45

*Ruiz v. CMT Design Build, LLC,* Civil Action No. DKC 16-1011, 2016 U.S. Dist. LEXIS 104361 (D. Md. Aug. 8, 2016) ....................................................................................................................43

*Chao v. A-One Med. Servs.*, 346 F.3d 908, 919 (9th Cir. 2003)....................................................46

*Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 758 (1993) ...................................................33

*Craighead v. Full Citizenship of Md., Inc.,* Civil Action No. 17-cv-595-PX, 2020 U.S. Dist. LEXIS 174747 (D. Md. Sep. 23, 2020) ...................................................................................................40

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 56 A.3d 170 (Md. 2012) .......... 34-35

*DeCosta v. U.S. Bancorp,* Civil Action No. DKC 10-0301, 2010 U.S. Dist. LEXIS 101873, at *9 n.2 (D. Md. Sep. 27, 2010) ...........................................................................................................44

*Elsayed v. Family Fare LLC,* No. 1:18-cv-1045, 2020 U.S. Dist. LEXIS 27064 (M.D.N.C. Feb. 18, 2020) ................................................................................................................................................ 29

*Ferdinand-Davenport v. Children's Guild,* 742 F.Supp.2d 772 (D. Md. 2010) ............................ 42

*Ferruchi v. Wal-Mart Stores, Inc.,* No. WDQ-11-0228, 2011 U.S. Dist. LEXIS 48561, 2011 WL 1748573 (D.Md. May 5, 2011) ............................................................................................................ 42

*Gaither v. Davi Transp. Servs., LLC,* Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432 (D. Md. May 22, 2020) ............................................................................................................ 41

*Harris v. Med. Transp. Mgmt.,* 300 F. Supp. 3d 234 (D.D.C. 2018) .............................................. 37

*Heath v. Perdue Farms, Inc.,* 87 F. Supp. 2d 452 (D. Md. 2000) ................................................... 46

*Hernandez v. Hoge*, Civil Action No. DKC 15-1988, 2016 U.S. Dist. LEXIS 66374 (D. Md. May 19, 2016) ................................................................................................................................................ 44

*Jacobson v. Comcast Corp.,* 740 F. Supp. 2d 683 (D. Md. 2010) .................................................. 26

*Lima v. MH & WH, LLC,* 372 F. Supp. 3d 317 (E.D.N.C. 2019) ............................................... 27-28

*Ling Nan Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003) ........................................... 25

*Long Green Valley Ass'n v. Bellevale Farms, Inc.,* 205 Md. App. 636, 46 A.3d 473 (2012) ...... 35

*McCoy v. Transdev Servs.*, Civil Action No. DKC 19-2137, 2021 U.S. Dist. LEXIS 48085 (D. Md. Mar. 15, 2021) ....................................................................................................................................... 41

*McLaughlin v. Murphy*, 436 F.Supp.2d 732 (D.Md. 2005) ............................................................. 39

*Moreau v. Air France,* 343 F.3d 1179 (9th Cir. 2003) .............................................................. 25-26

*Odjaghian v. EngagePoint, Inc.,* No. JKB-18-0151, 2018 U.S. Dist. LEXIS 112367 (D. Md. July 5, 2018) ................................................................................................................................................ 40

*Pridgen v. Appen Butler Hill, Inc.,* No. JKB-18-61, 2019 U.S. Dist. LEXIS 35283 (D. Md. Mar. 4, 2019) ................................................................................................................................................. 40

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S. Ct. 1801 (1967) .............. 35

*Quickley v. Univ. of Md. Med. Sys. Corp.,* Civ. No. CCB-12-321, 2012 U.S. Dist. LEXIS 131280, 2012 WL 4069757 (D. Md. Sept. 14, 2012) ..................................................................................... 40

*Ramirez v. 316 Charles, LLC,* No. SAG-19-03252, 2020 U.S. Dist. LEXIS 237015 (D. Md. Dec. 16, 2020) .............................................................................................................................................. 44

*Randolph v. PowerComm Constr., Inc.,* 309 F.R.D. 349 (D. Md. 2015) .........................................45

*Salinas v. Commercial Interiors, Inc*., 848 F.3d 125 (4th Cir. 2017) .......................... 24, 25, 38, 39

*Sanabria v. Cocody, Inc.,* Civil Action No. DKC 16-0365, 2017 U.S. Dist. LEXIS 110920 (D. Md. July 17, 2017) ........................................................................................................................................44

*Skripchenko v. VIRxSYS Corp.,* Civil Action No. TDC-13-0004, 2014 U.S. Dist. LEXIS 136423 (D. Md. Sep. 26, 2014) ......................................................................................................................44

*Turner Constr. Co. v. BFPE Int'l, Inc.,* No. JKB-15-368, 2016 U.S. Dist. LEXIS 39161 (D. Md. Mar. 25, 2016) ...................................................................................................................................34

*United States Dep't of Labor v. Fire & Safety Investigation Consulting Servs.,* LLC, No. 1:17CV25, 2018 U.S. Dist. LEXIS 74777 (N.D.W. Va. May 3, 2018) .........................................46

*Wash. Suburban Sanitary Comm'n v. Phillips,* 413 Md. 606, 994 A.2d 411 (Md. 2010) .............36

*Watkins v. C. Earl Brown, Inc.,* 173 F. Supp. 2d 409 (D. Md. 2001) .............................................33

*West v. CSX Corp.,* No. JFM-05-3256, 2006 U.S. Dist. LEXIS 6071, 2006 WL 373843 (D. Md. Feb. 16, 2006) ...................................................................................................................................42

*Whittaker v. David's Beautiful People, Inc.,* Civil Action No. DKC 14-2483, 2016 U.S. Dist. LEXIS 13266 (D. Md. Feb. 4, 2016) ................................................................................................39

*Williams v. Loved Ones in Home Care, LLC,* No. 2:17-CV-04162, 2018 U.S. Dist. LEXIS 129573, 2018 WL 3676923 (S.D.W. Va. Aug. 2, 2018) ...........................................................................45-46

*Wm. T. Burnett Holding LLC v. Berg Bros. Co*., 235 Md. App. 204, 217 (2017) .................. 34, 37

*Young v. Act Fast Delivery of W. Va., Inc.,* No. 5:16-cv-09788, 2018 U.S. Dist. LEXIS 682 (S.D. W. Va. Jan. 3, 2018) ......................................................................................................................27-28

## INDEX OF EXHIBITS

EXHIBIT 1    BCHD Contract

EXHIBIT 2    Vince Haney Deposition Transcript (Excerpts)

EXHIBIT 3    MTA Contract

EXHIBIT 4    MTA Living Wage Affidavit

EXHIBIT 5    BCHD Subcontract

EXHIBIT 6    Scott Forman Deposition Transcript (Excerpts)

EXHIBIT 7    MTA Subcontract

EXHIBIT 8    Rebecca Jones Deposition Transcript (Excerpts)

EXHIBIT 9    Jawhann Price Deposition Transcript (Excerpts)

EXHIBIT 10   Ayana Bluiett Deposition Transcript (Excerpts)

EXHIBIT 11   Connie Jones Deposition Transcript (Excerpts)

EXHIBIT 12   Damon Massie Jr. Deposition Transcript (Excerpts)

EXHIBIT 13   Teressa Miles Deposition Transcript (Excerpts)

EXHIBIT 14   Monica Jones Deposition Transcript (Excerpts)

EXHIBIT 15   SaQuan Miller Deposition Transcript (Excerpts)

EXHIBIT 16   Tyikiava White Deposition Transcript (Excerpts)

EXHIBIT 17   Christina Collins Deposition Transcript (Excerpts)

EXHIBIT 18   Jasmine Goodman Deposition Transcript (Excerpts)

EXHIBIT 19   Davi Website

EXHIBIT 20   Davi Application

EXHIBIT 21   Davi Hiring Standards

EXHIBIT 22   Davi Employee Handbook

EXHIBIT 23   Email regarding 'Word Class Customer Training' and CPR training

EXHIBIT 24   Deandre Banks Text Messages

EXHIBIT 25   Email from James Davis to Transdev of the drivers' availabilities

EXHIBIT 26   Text Messages with Ann Brown

EXHIBIT 27   Deandre Banks Deposition Transcript (Excerpts)

EXHIBIT 28   Deandre Banks Declaration

EXHIBIT 29   Danielle McCoy employment under MTA

EXHIBIT 30   Tyree Miles employment under MTA

EXHIBIT 31   Ayana Bluiett employment under MTA

EXHIBIT 32   Christina Collins employment under MTA

EXHIBIT 33   Damon Massie Jr employment under MTA

EXHIBIT 34   Teresa Miles employment under MTA

EXHIBIT 35   Danielle McCoy Request for Admissions (RFA)

EXHIBIT 36   Tyree Miles Request for Admissions (RFA)

EXHIBIT 37   Jawhann Price Request for Admissions (RFA)

EXHIBIT 38   Monica Jones Request for Admissions (RFA)

EXHIBIT 39   Shane Sousa Deposition Transcript (Excerpts)

EXHIBIT 40   Damon Massie Jr. Text Message

EXHIBIT 41   Connie Jones Request for Admissions (RFA)

EXHIBIT 42   Tyikiava White Request for Admissions (RFA)

EXHIBIT 43   Christina Collins Request for Admissions (RFA)

EXHIBIT 44   Deandre Banks Request for Admissions (RFA)

EXHIBIT 45   Arlette Whitley Deposition Transcript (Excerpts)

EXHIBIT 46   SaQuan Miller Request for Admissions (RFA)

EXHIBIT 47   Ayana Bluiett Request for Admissions (RFA)

EXHIBIT 48   Teresa Miles Request for Admissions (RFA)

EXHIBIT 49   Transdev Dress Code Policy

EXHIBIT 50   Teamsters 355 Collective Bargaining Agreement

EXHIBIT 51   Jasmine Goodman Request for Admissions (RFA)

EXHIBIT 52   Damon Massie Jr. Request for Admissions (RFA)

EXHIBIT 53   Damon Massie Paystubs

EXHIBIT 54   Jawhann Price Amended ROG

EXHIBIT 55   Davi invoice to Transdev

EXHIBIT 56   SaQuan Miller Paystubs

EXHIBIT 57   BCHD Affidavit of Agreement

EXHIBIT 58   Email between Scott Forman and Davi

## I.      <u>INTRODUCTION</u>

Transdev Services, Inc. ("Transdev") is sympathetic to Plaintiffs' contention that they were paid less than the legally mandated wage by Davi Transportation Services LLC ("Davi"). But Transdev's sympathy does not render it culpable to Plaintiffs for Davi's alleged failures.  As an employer to numerous Maryland residents, Transdev often pays its employees above the legally mandated wage. Transdev realizes that paying a living wage is one of the keys to employee recruitment and retention which is, in turn, integral to Transdev's success as a leading provider of paratransit and non-emergency medical transport in Maryland.

Plaintiffs' suit seeks redress from Transdev for underpayment of legally mandates wages, alleging violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §3-401, *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), the Maryland Living Wage Law ("MLWL"), Md. Code Ann., State Fin. & Proc. §18-101 *et seq*., and breach of contract. However, Transdev was not Plaintiffs' employer; rather, Plaintiffs were solely employed by Davi Transportation, LLC ("Davi") – one of Transdev's subcontractors.

Transdev acknowledges that joint employer liability is construed liberally. Yet even under the Fourth Circuit's test for joint employment, there is no genuine dispute of material fact that Plaintiffs' sole employer was Davi. Accordingly, Transdev requests that the Court deny Plaintiffs' Partial Motion for Summary Judgment, and find that Transdev was neither Plaintiffs' joint employer nor breached any contractual obligations to Plaintiffs. This will dispose of this case in full. Also, Transdev requests that the Court grant summary judgment that certain Plaintiffs do not have claims under the MWHL and MLWL. This will narrow the issues at trial to the extent that Transdev is not granted full summary judgment.

## II.     STATEMENT OF MATERIAL FACTS

### A.     Transdev is a leading provider of paratransit and non-emergency medical transport in Maryland.

Transdev provides paratransit and non-emergency transport to clients across Maryland. In this lawsuit, Plaintiffs call into question Transdev's employment practices. *See* ECF-158, First Am. Compl., generally.  In Maryland, Transdev has supplied transportation services on behalf of the city and state. Specifically, Transdev contracted with the Baltimore City Health Department ("BCHD") from 2005 through 2018 ("BCHD Contract").[1]  Transdev continues to contract with the Maryland Transportation Administration ("MTA"), and has done so since 2012 ("MTA Contract").[2]  Plaintiffs in this case were drivers under the BCHD and/or MTA Contracts via Transdev's subcontractor, Davi.

### i.     BCHD Contract

Transdev contracted with BCHD to provide medical transportation services "for eligible Medicaid clients who resided within the geographic limits of the City of Baltimore."[3] The BCHD Contract contemplated Transdev's use of subcontractors,[4] and required that "[s]ervices offerors shall comply with all legally mandated wages . . . [including the] City's Wage provision when applicable.[5]

---

[1] Ex. 1 (BCHD Contract) at McCoy_Transdev017873; Ex. 6 (S. Forman Dep.) at 214:14-19.

[2] Ex. 2 (V. Haney Dep.) at 32:19-21.

[3] Ex. 1 (BCHD Contract) at McCoy_Transdev017871.

[4] *See e.g.* McCoy_Transdev017896 ("subcontractors . . . may not engage in unfair labor practices . . .").

[5] *Id.* at McCoy_Transdev017889.

    ii.  *MTA Contract*

   Transdev contracted with MTA to provide ADA compliant paratransit services.[6] The

MTA Contract includes several notable provisions:

- "MTA shall develop and run manifests that shall be delivered each day to the selected Contractors by use of the Trapeze Software System." Ex. 3 (MTA Contract) at Section II.A, McCoy_Transdev017360

- "The MTA's cell phone policy shall be strictly adhered to." *Id.* at II.B.2.d, McCoy_Transdev017362,

- "Background security check, fingerprinting, drug and alcohol testing are to be conducted and results submitted to the MTA prior to operator services being provided." *Id.* at II.B.2.g.

- Contractors **are required** to "optimiz[e] runs by moving trips assigned as needed to maximize service performance." *Id.* at III.C., McCoy_Transdev017364 (emphasis added).

- "If Operators are obtained through subcontractors **they shall be fully incorporated into the Contractors overall operation as if they were a Contractor Operator**." *Id.* at IV, McCoy_Transdev017366 (emphasis added).

- "Subcontractor operators shall not pull out from different locations or report to other starters or managers." *Id.*

- "The Contractor shall be fully responsible for training subcontracted Operators and for monitoring their performance and maintaining records of performance using their own employee performance evaluation and discipline plan. The actual subcontractor employer shall be responsible for enforcing recommended discipline as needed." *Id.*; *see also* at IV.C., McCoy_Transdev017377-79 (setting forth required training content).

- "Any subcontractor providing Operators shall be subject to all of the requirements set forth in this RFP relating to Operators, including but not limited to compensation and personnel policies." *Id.* at IV, McCoy_Transdev017366.

- "Each Contractor shall ensure that all Operators including subcontractors and Road Supervisors wear official uniforms. Uniforms shall be approved in writing by the MTA. The uniforms shall consist of: black slacks, a solid light blue long or short sleeve button-up shirt, button-up polo-type shirt or blouse; closed toe black shoes appropriate for wear while handling and loading passengers in wheelchairs, a dark colored over-garment as needed for weather protection such as a light jacket. An MTA approved safety vest with the Contractor's name is to be worn at all times whenever the Operator or Road Supervisor exits the vehicle while on duty." *Id.* at IV.B.3, McCoy_Transdev017374-75.

- "The MTA requires the supply and installation by the Contractor of Drive Cam surveillance cameras on board each vehicle for the safety and security of customers and operators/drivers at no additional cost to the State." *Id.* at IV.G.5., McCoy_Transdev017390.

---

[6] Ex. 3 (MTA Contract) at McCoy_Transdev017340.

3

The MTA Contract also required payment of a living wage to operators.[7]

### B.      Davi provided subcontracted services to Transdev.

James Davis was the owner and CEO of Davi, and Davi was a subcontractor under Transdev's BCHD and MTA contracts.[8]

#### i.      BCHD Subcontract

Davi subcontracted with Transdev from August 25, 2011 through July 1, 2018 ("BCHD Subcontract"),[9] to provide drivers for Transdev's BCHD Contract. The Complaint alleges that the following Plaintiffs (and Davi drivers) serviced the BCHD contract: Danielle McCoy, Monica Jones, Connie Jones, Tyree Miles, Jawhann Price, Jasmine Goodman, Tyikiava White (collectively referred to as "BCHD Plaintiffs"). *See* ECF-158, Compl, at ⁋⁋ 11, 12, 13, 15, 16, 19, and 22. Davi classified the BCHD Plaintiffs as independent contractors.[10] The Complaint also alleges that Plaintiff Deandre Banks provided dispatch and road supervision services under the BCHD Contract. *Id.* at ⁋ 68.

Specifically, the BCHD Subcontract required that Davi comply with Transdev's contract with BCHD, and "adhere to the scope of service, the conditions under which those services are to be provided, and the requirements as specified . . .".[11] Moreover, Davi agreed to "pay its employees at least the minimum Living Wage rate . . .".[12] Davi also acknowledged that it was an independent contractor, and it was responsible for its own payroll.[13] Davi acknowledged that Transdev did not

---

[7] Ex. 4 (MTA Living Wage Affidavit) at P000734.

[8] Ex. 1 (BCHD Subcontract), generally; Ex. 7 (MTA Subcontract), generally.

[9] Ex. 6 (S. Forman Dep.) at 214:4-19.

[10] Ex. 8 (R. Jones Dep.) at 35:16-18; 55:20-56:2. (Rebecca Jones deposition was recently taken on April 7, 2021, and Ms. Jones has not yet had time to verify her transcript.)

[11] Ex. 5 (BCHD Subcontract) at McCoy_Transdev001856.

[12] *Id.* at McCoy_Transdev001857, ⁋ 6.

[13] *Id.* at McCoy_Transdev001862, ⁋ 1.

have any contractual obligations to Davi's employees.[14] Notably, this agreement was non-exclusive.[15]

> ii.    *MTA Subcontract*

Davi subcontracted with Transdev ("MTA Subcontract") from August 30, 2016 through mid-2018,[16] to provide drivers for Transdev's MTA Contract. The Complaint alleges that the following Plaintiffs (and Davi drivers) serviced the MTA Contract: Danielle McCoy, Monica Jones, Sa'Quan Miller, Tyree Miles, Jawhann Price, Ayana Bluiett, Christina Collins, Damon Massie, and Teresa Miles ("MTA Plaintiffs"). ECF 158 at ₱₱ 11, 12, 14, 15, 16, 17, 18, 20, and 21. Davi classified MTA Plaintiffs as employees.[17] The Complaint also alleges that Plaintiff Deandre Banks provided dispatch and road supervision services under the MTA Contract. *Id.* at ₱ 68.

Notably, Davi agreed to comply with the terms and provisions of the MTA Contract.[18] Davi also agreed to comply with Maryland's living wage law.[19] Davi acknowledged that it was an independent contractor, and it was responsible for its own payroll.[20] And, Davi acknowledged that Transdev did not have any contractual obligations to Davi's employees.[21]

---

[14] *Id.*

[15] *Id*. at McCoy_Transdev001855.

[16] Ex. 7 (MTA Subcontract) at McCoy_Transdev018314.

[17] Ex. 8 (R. Jones Dep.) at 56:3-9.

[18] Ex. 7 (MTA Subcontract) at McCoy_Transdev018319, at ₱ 4.

[19] *Id.* at McCoy_Transdev018321.

[20] *Id.* at McCoy_Transdev018331, ₱ 1.

[21] *Id.*

### C. Davi was a sophisticated transportation operation.

Contrary to Plaintiffs' characterization,[22] Davi was a sophisticated employer and provided transportation services to Hartford County[23] and the public,[24] besides Transdev. Davi was in business for at least seven years,[25] and had its own website, employee application, hiring standards, and employee handbook.[26] In Davi's own words, its business was in "high demand."[27]

Davi's owner, Mr. James Davis, was in full command of his company. He set his drivers schedules, including the schedules of the BCHD[28] and MTA[29] Plaintiffs. He, also routinely hired family members to work for him.[30] In fact, Plaintiffs Deandre Banks and Monica Jones were Mr.

---

[22] *See* ECF 156-1 at fn. 13, and accompanying text. Notably, Plaintiffs would have no knowledge whether Davi's subcontracts with Transdev constituted the "vast majority" of Davi's business, as the Plaintiffs testified they "rarely [saw] other" drivers given their different shifts, and that they largely did not know each other. Ex. 9 (J. Price Dep. ) at 22:2-7; *see also* Ex. 10 (A. Bluiett Dep. ) at 17:9 -18:14 (stating did not know other plaintiffs); Ex. 17 (C. Collins Dep.) at 23:3-24, 25:24-26:14; Ex. 18 (J. Goodman Dep.) at 19:6-20:6, 20:20-21:5; Ex. 11 (C. Jones Dep.) at 24:1- 25:19; Ex. 14 (M. Jones Dep.) at 50:19-24, 51:17-54:3; Ex. 12 (D. Massie Dep.) at 26:1–27:8; Ex. 13 (Teresa Miles Dep.) at 30:11-32:10; Ex. 15(S. Miller Dep.) at 27:13-25, 34:7-35:14; Ex._(T. White Dep.) at 29:11-30:1, 31:17-32:13. *See also* Ex. 8 (R. Jones Dep.) at 121:1-13(where James Davis' ex-wife did not know the proportional value of Davi's contract with Hartford County and subcontracts with Transdev).

[23] Notably, a third of the Plaintiffs provided services to Davi under the Hartford County contract. Ex. 18 (J. Goodman Dep.) at 26:19-21; Ex. 11 (C. Jones Dep.) at 65:22-66:8; Ex. 9 (J. Price Dep.) at 28:17-18; Ex. 16 (T. White Dep.) at 51:7-10.

[24] Ex. 19 (Davi Website) at McCoy_Transdev038200, 038204, 038207 (transportation services include "wheelchair access, transportation for the elderly to shopping medical appointments, etc. . . . group trips and services to Maryland Correctional Facilities.").

[25] *See* Maryland Business Express Entity Search, last accessed Apr. 15, 2021 (showing Davi formed on June 2, 2011).

[26] Ex. 19 (Davi Website) at McCoy_Transdev038198-038208; Ex. 20 (Davi Application) at McCoy_Transdev001893-94; Ex. 21 (Davi Hiring Standards) at McCoy_Transdev001895-97; Ex. 22 (Davi Employee Handbook) at McCoy_Transdev001898-1940.

[27] Ex. 19 (Davi Website) at McCoy_Transdev038201.

[28] Ex. 6 (S. Forman Dep.) at 181:22-182:20.

[29] Ex. 2 (V. Haney Dep.) at 184:15-185:5, 187:10 - 188:5.

[30] Ex._(C. Collins Dep.) at 42:17-21 ("I believe they were all family or something. A lot of his workers were like his family.").

6

Davis' stepchildren, and referred to him as "Dad."[31] Plaintiff Jawhann Price dated Plaintiff Monica Jones during the relevant time period.[32] And Plaintiff Sa'Quan Miller is Mr. Davis' nephew.[33]

In particular, Mr. Davis worked closely with his stepson, Deandre Banks.

### i. *Deandre Banks*

Deandre Banks began working for Davi in October 2015, and his task was "to basically make sure that the paperwork [*i.e*., manifests and pre-trip inspections] were filled [out]."[34] Because Mr. Banks was Mr. Davis' stepson, he did not have to interview for the job.[35] He reported to Davi's facility located in Owings Mills, and initially performed work only on the MTA Subcontract.[36] On or around February 2017, Mr. Banks became a dispatcher and road supervisor for Davi for both the BCHD and MTA Subcontracts.[37] This was considered a supervisory position.[38] Specifically, Mr. Banks states that he supervised Plaintiffs Danielle McCoy, Monica Jones, Connie Jones, Sa'Quan Miller, Tyree Miles, and Jawhann Price.[39] He states that his direct supervisor was Ann Brown,[40] who was also employed by Davi, and that Ann Brown trained him.[41] His daily activities included handing driver manifests to Davi drivers, collecting Davi operator's manifests, and "communicat[ing] with drivers so they were on top of their trips."[42] Mr. Banks states that "I was

---

[31] Ex. 15 (S. Miller Dep.) at 42:18-43:2; Ex. 14 (M. Jones Dep.) at 66:22-67:14; Ex 24 (D. Banks Text Messages) at P001717.

[32] Ex. 14 (M. Jones Dep.) at 51:19-52:4.

[33] Ex. 15 (S. Miller Dep.) at 37:19-20.

[34] Ex. 27 (D. Banks Dep.) at 71:5-14.

[35] Ex. 28 (D. Banks Decl.) at ¶ 8.

[36] Ex. 27 (D. Banks Dep.) at 77:7-9; 101:18 – 102:13.

[37] *Id.* at 73:22-74:2; 97:16-19; 131:5-17.

[38] *Id.* at 97:10-11.

[39] *Id.* at 158:7-9; 160:5-6; 161:9-11; 162:12-13; 164:9-11, 16-19.

[40] Ann Brown is James Davis' sister.

[41] Ex. 27 (D. Banks Dep.) at *74*:13-23; 77:20-22.

[42] *Id.* at 78:17-79:2.

basically responsible for making sure everybody was doing their job correctly."[43] Mr. Banks also stated that he was responsible for monitoring new employees' attendance at training and distributing paychecks.[44] Mr. Banks testified that, although he often reported to Transdev's Wicomico facility, Transdev employees did not know when he arrived or when he departed.[45] Mr. Banks resigned from Davi in December 2017.[46]

Yet, what is most notable about Mr. Banks is his propensity for perjury. Specifically, Mr. Banks denied his familial ties to James Davis and Plaintiffs Monica Jones, Sa'Quan Miller, and Jawhann Price during his deposition. Mr. Banks testified falsely that he did not work with any of his relatives, although he worked with his sister, Plaintiff Monica Jones, and his cousin, Plaintiff Sa'Quan Miller.[47] Mr. Banks testified falsely that he did not know his own mother, Rebecca Jones, who was married to James Davis from 1999-2018.[48] Only after Transdev's counsel prompting, and more than six weeks after his deposition, did Mr. Banks issue a lengthy corrective admitting that Plaintiff Monica Jones is his sister, Plaintiff Sa'Quan Miller is his nephew, and that Rebecca Jones is his mother.[49] Mr. Banks also admitted that James Davis was his stepfather, and that he lived with him during relevant time period of this lawsuit.[50]

### D. MTA Plaintiffs often worked less than 13 consecutive weeks.

The MTA Plaintiffs seek to find Transdev liable under the MLWL, which is only applicable to employees that have worked more than 13 weeks. Here, Plaintiff Danielle McCoy performed

---

[43] *Id.* at 157:11-13.

[44] *Id.* at 110:10-111:10; 126:15-127-5

[45] *Id.* at 210:23-213:6.

[46] *Id.* at 178:2-7.

[47] *Id.* 156:22-157:4.

[48] *Id.* at 25:11-16, 26:20-22, 70:2-4.

[49] Ex. 28 (D. Banks Decl.) dated Oct. 21, 2020, generally.

[50] *Id.* at ¶ 9.

under the MTA contract from April 4, 2018 through June 25, 2018, or for less than 12 weeks.[51]

Similarly, Plaintiff Tyree Miles performed under the MTA contract from October 18, 2016 through

December 23, 2016, or less than ten weeks.[52] Plaintiff Ayana Bluiett performed under the MTA

contract from October 3, 2017 through November 6, 2017, or less than five weeks.[53] Plaintiff

Christina Collins performed under the MTA contract from March 6, 2017 through April 17, 2017,

or six weeks.[54] Plaintiff Damon Massie, Jr. performed work under the MTA contract from

February 6, 2018 through April 28, 2018, or less than 12 weeks.[55] Plaintiff Teresa Miles performed

---

[51] Ex. 29 (Danielle McCoy employment under MTA) at McCoy_Transdev000971 (email from James Davis indicating that Ms. McCoy completed training and needs assignment, establishing that her work under the MTA started sometime after April 2, 2018); McCoy_Transdev018480, McCoy_Transdev002699-002700, McCoy_Transdev002701-002712 (Davi Hours reports indicating that Ms. McCoy worked from April 4, 2018 through June 25, 2018). (Original hours reports was produced in native format).

[52] Ex. 30 (Tyree Miles employment under MTA) at McCoy_Transdev003076 (showing Mr. Miles started training September 26, 2016); McCoy_Transdev002665 (Davi Hours report showing that Mr. Miles started driving on October 18, 2016); McCoyTransdev001884(Davi Hours report showing that Mr. Miles last run was on December 23, 2016). (Original hours reports was produced in native format).

[53] Ex. 31 (Ayana Bluiett employment under MTA ) at McCoy_Transdev002656 (email from James Davis indicating that Ms. Bluiett completed training and needs assignment, establishing that her work under the MTA started sometime after October 2, 2017); McCoy_Transdev002689, McCoy_Transdev002691, and McCoy_Transdev023323 (Davi Hours reports indicating that Ms. Bluiett worked from October 3, 2017 through November 6, 2017); McCoy_Transdev019470 (email where MTA takes Ms. Bluiett off the MTA Contract because her background check was not approved). (Original hours reports was produced in native format).

[54] Ex. 32 (Christina Collins employment under MTA) at McCoy_Transdev002653-54 (email from James Davis to Transdev stating that "effective 3/6/17" Ms. Collins would perform under MTA). McCoy_Transdev016606 (email dated March 15, 2017 from James Davis to Transdev stating that Ms. Collins was no longer an operator); McCoy_Transdev000990, McCoy_Transdev002668, McCoy_Transdev002668. McCoy_Transdev002670, McCoy_Transdev002680 (Davi Hours reports indicating that Ms. Collins performed under the MTA Contract from March 6, 2017 through April 17, 2017). (Original hours reports was produced in native format).

[55] Ex. 33 (Damon Massie Jr. employment under MTA) at McCoy_Transdev020939(email dated December 21, 2017 indicating Mr. Massie's background check is approved); McCoy_Transdev015147(indicating Mr. Massie began driving on the MTA contract of February 6, 2018); McCoy_Transdev002702 (indicating Mr. Massie's last day driving on the MTA Contract was April 28, 2018).

under the MTA contract from November 21, 2017 through no later than November 24, 2017, or less than one week.[56] Plaintiff Jawhann Price never worked on the MTA Contract as asserted in the Complaint (ECF-158).[57]

### E. Davi hired and fired Plaintiffs.

#### i. BCHD Contract

Here, **all** of the BCHD Plaintiffs concede that they were directly hired by Davi.[58] Likewise, the evidence supports that Davi terminated the BCHD Plaintiffs' employment, or that the BCHD Plaintiffs resigned directly with Davi.[59] As a matter of fact, in prior litigation against Davi and Transdev, Plaintiffs' counsel conceded that Davi, not Transdev, "hired and fired" drivers that performed under the BCHD Contract.[60]

---

[56] Ex. 34 (Teresa Miles employment under MTA) at McCoy_Transdev000986(establishing Ms. Miles's background check was approved on November 6, 2017); McCoy_Transdev002694(Davi Hours report indicating Ms. Miles' first day driving was November 21, 2017, and the last day was November 24, 2017.)

[57] Mr. Price stated in his Amended Responses and Objections to Transdev's First Set of Interrogatories that he did not work under the MTA contract. Ex. 59 (J. Price Amended ROG) at ¶14. However, he changed this testimony during his deposition, stating that he did work for MTA. Ex. 9 (J. Price Dep.) at 59:12-62:3. Notably, Mr. Price was never given an employee number, as was the case for every other MTA Plaintiff. It is likely that Mr. Price is confusing the time that he worked directly for Transdev under the MTA Contract, which occurred prior to him being employed by Davi. Mr. Price admits that he has "a bad memory. [H]e got hit in the head with a bat in the last couple of years. [H]is memory is cloudy and bad." *Id*. at 22:13-15, 58:3-17.

[58] Ex. 11 (C. Jones Dep.) at 28:22-24 (stating James Davis told her he wanted to hire her); Ex. 14 (M. Jones Dep.) at 18:21-24 (submitted job application to Davi) ; Ex. 35 (D. McCoy RFA) at No. 11; Ex. 30 (Tyree Miles RFA) at No. 11; Ex. 37 (J. Price RFA) at No. 11; Ex. 18 (J. Goodman Dep.) at 25:20-23 (stating she was interviewed and hired by Davi); Ex. 16 (T. White Dep.) at 46:19-22 (James Davis hired her after the interview).

[59] Ex. 11 (C. Jones Dep.) at 48:17-22 (stating she was fired from Davi);Ex. 9 (J. Price Dep.) at 56:23-57:4 (stating that he left Davi); Ex. 16 (T. White Dep.) at 76:18-21(stating she left Davi); Ex. 14 (M. Jones Dep.) at 46:1-14.

[60] Motion for Default Judgment at 5, fn. 4, *Gaither v. Davi Transp. Servs., LLC*, Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432 (D. Md. May 22, 2020)( "Davi Transportation, through its owner, hired and fired employees, set compensation policies, issued paychecks, and determined which drivers were assigned which daily routes. Davi Transportation required

### ii. *MTA Contract*

Also, all of the MTA Plaintiffs, except for Damon Massie, concede that they were directly hired by Davi.[61] Plaintiffs mistakenly believe that Damon Massie was hired by Transdev,[62] but as explained by Shane Sousa, Transdev's HR Manager, he was not. Rather, Transdev extended Mr. Massie a contingent offer, which was revoked when Transdev's general manager and James Davis decided that Mr. Massie would fit better at Davi – likely because Davi was having issues recruiting drivers.[63]

Similarly, the evidence supports that Davi terminated MTA Plaintiffs' employment, or that the MTA Plaintiffs resigned directly with Davi.[64] Under very rare[65] and egregious circumstances, Transdev exercised its authority under the MTA Contract to remove a subcontractor's driver from service. For example, Sa'Quan Miller testified that although he was hired by Davi, that he was

---

Plaintiffs to follow 'a Driver Manifest,' which detailed the Plaintiffs' routes, owned the vehicles operated by Plaintiffs, and required Plaintiffs to follow strict policies throughout the course of each shift.")(internal citations omitted).

[61] Ex. 17 (C. Collins Dep.) at 44:23-45:8 (stating James Davis hired her); Ex. 38 (M. Jones RFA) at No. 11; Ex. 36 (Tyree Miles RFA) at No. 11; Ex. 10 (A. Bluiett Dep.) at 22:17-24 (stating she interviewed with James Davis and started working for Davi): Ex. 13 (Teresa. Miles Dep.) at 24:10-15 (spoke with supervisors from Davi about starting at Davi); Ex. 15 (S. Miller Dep.) at 48:14-17 (James Davis hired after the results of the DOT drug test).

[62] *Contrast with* ECF 156-1 at 24-25.

[63] Ex. 39 (S. Sousa Dep.) at 120:22 – 121:10; Ex. 40 (D. Massie Text Message) at P0001624 (D. Massie concedes being hired for Davi).

[64] Ex. 17 (C. Collins Dep.) at 60:4 (stating she was terminated by James Davis); Ex. 10 (A. Bluiett Dep.) at 56:9-15 (stating that James Davis told her that she will no longer will be working ); Ex. 12 (D. Massie Jr. Dep.) at 106:18 (stating that he quit); Ex. 13 (Teresa. Miles Dep.) at 25:17-23 (stating that she quit Davi because there was no work).

[65] *Contrast with* ECF 156-1 at fn. 58, where Plaintiffs state that Transdev "regularly" removed drivers from service, but only cite to Mr. Miller and Ms. Jones, both drivers under the MTA Contract, as an example.  Notably, Ms. Jones' testimony is not corroborated by Transdev, and the fact that Ms. Jones began working on the BCHD Contract after allegedly being removed from service on the MTA Contract belies Plaintiffs' claims that Transdev exercised power to "terminate" a Davi employee. *See* Ex. 14 (M. Jones Dep.) at 42:9-43:24.

terminated by Transdev for using his cell phone while transporting clients.[66] Although removed from the MTA Contract, Mr. Miller was free to continue working for Davi under its other contracts or services. Transdev encouraged Davi to remove Mr. Miller from service as **required** by the MTA.[67] Mr. Miller's conduct was not only illegal,[68] but also violative of Davi's subcontract with Transdev,[69] and Davi's own **zero tolerance** electronics policy enforced via the employee handbook.[70]

### F.      Davi trained BCHD Plaintiffs, and Transdev only trained MTA Plaintiffs as contractually required.

Davi trained BCHD Plaintiffs,[71] and Transdev trained MTA Plaintiffs only to the extent required by the MTA contract.[72]

---

[66] Mr. Miller's testimony that Transdev's HR department terminated him is not credible. Ex. 15 (S. Miller Dep.) at 85:3-16. Specifically, when asked why he stopped working for Davi, he stated "[c]areer –I wanted to leave transportation and do something else." *Id.* at 82:1-3.  A moment later when directly asked if he was terminated, he perjured himself and admitted that he was terminated – which was the true reason he left Davi. *Id.* at 82:4-5.

[67] Ex. 3 (MTA Contract) at McCoy_Transdev017522, Section 1.

[68] Md. TRANSPORTATION Code Ann. § 21-1124.2 ("A driver of a motor vehicle that is in motion may not use the driver's hands to use a handheld telephone other than to initiate or terminate a wireless telephone call or to turn on or turn off the handheld telephone.")

[69] Ex. 7 (MTA Subcontract) at McCoy_Transdev001856 (Davi agrees to adhere to conditions required in MTA Contract).

[70] Ex. 22 (Davi Employee Handbook), § 4.19, McCoy_Transdev01931 ("[Davi] has in place for the protection of our clients and staff **ZERO TOLERANCE ELECTRONICS POLICY** that Must be adhered to at all times.")(emphasis in original).

[71] Ex. 41 (C. Jones RFA) at No. 4; Ex. 42 (T. White RFA) at No. 3; Ex. 38 (M. Jones RFA) at No. 2; Ex. 51 (J. Goodman RFA) at No. 3; Ex. (J. Price RFA) at No. 2; Ex. 35 (D. McCoy RFA) at No. 2.

[72] Ex. 3 (MTA Contract) at McCoy_Transdev017366, Section II. §IV

### i.  *Davi trained BCHD Plaintiffs.*

Davi trained the BCHD Plaintiffs,[73] and told them training was mandatory.[74] Training was provided by James Davis or other Davi employees in the parking lot of the Davi facility,[75] and then the training continued onto different routes.[76] The training was for one to two weeks,[77] and Davi's vehicles were used.[78] Attendance for the training was taken by Davi.[79] Davi also trained employees on how to complete the BCHD driver manifests.[80]

### ii.  *Pursuant to the MTA Contract, Transdev trained the MTA Plaintiffs.*

The requirements of the MTA training program were set forth in the MTA contract.[81] MTA approved Transdev's training program prior to administration.[82] According to the MTA Contract, Transdev was required to train not only its own employees, but also its subcontractors' employees.[83] Thus, Transdev was contractually precluded from allowing Davi to administer its own training program. As such, Davi required MTA Plaintiffs to attend the training provided by Transdev.[84] The training consisted of 120 hours (3 weeks), with the first week in the classroom,

---

[73] Ex. 6 (S. Forman Dep.) at 120:22- 121:7; Ex. 18 (J. Goodman Dep.) at 39:14-15; *Contrast with* ECF 156-1 at 16.

[74] Ex. 16 (T. White Dep.) at 73:12-17; Ex. 43 (C. Collins RFA) at No. 3.

[75] Ex. 14 (M. Jones Dep.) at 98:17-22; Ex. 11 (C. Jones Dep.) at 30:8-31:8; Ex. 44 (D. Banks RFA) at No. 7

[76] Ex. 9 (J. Price Dep.) at 32:13-17

[77] Ex. 18 (J. Goodman Dep.) at 33:2-3; Ex. 14 (M. Jones Dep.) at 98:15-16.

[78] Ex. 14 (M. Jones Dep.) at 98:15-22

[79] Ex. 27 (D. Banks Dep) at 110:10-13

[80] Ex. 9 (J. Price Dep.) at 42:1-4; Ex. 11 (C. Jones Dep.) at 68:9-12; *Contrast with* ECF 156-1 at 18.

[81] Ex. 2(V. Haney Dep.) at 164:11-19; Ex. 3 (MTA Contract) at McCoy_Transdev017349.

[82] Ex. 2 (V. Haney Dep.) at 163:24-164:4

[83] *Id*.; Ex. 45 (A. Whitley Dep.) at 26:19 – 27:15; Ex. 3 (MTA Contract) at McCoy_Transdev017366.

[84] Ex. 36 (Tyree Miles RFA) at No.1; Ex. 48 (Teresa Miles RFA) at No.1; Ex. 46 (S. Miller RFA) at No. 2; Ex. 38 (M. Jones RFA) at No. 1; Ex. 35 (D. McCoy RFA) at No. 1; Ex. 47 (A. Bluiett RFA) at No. 1.

13

the second week in a closed-course training, and the third week being behind the wheel training.[85] At the end of each training, MTA required the drivers to take a quiz.[86] If a driver failed the quiz, MTA required that the person be removed from training[87] and not permitted to work on the MTA contract.[88] Daily attendance for the MTA Plaintiffs was taken by Davi,[89] and any attendance issues were reported to Davi.[90]

Although Transdev also provided training to subcontractors, including Davi operators, under the MTA contract, Transdev separated its employees from Davi employees during training,[91] and referred to Davi drivers as subcontractors.[92] Notably, Transdev provided additional training to its own driver-employees that was in excess of the scope required by the MTA. Specifically, Mr. Davis complained that Transdev was not providing Davi drivers with the 'Word Class Customer Training' and CPR training.[93] Transdev explained that it did not allow Davi drivers to participate in this training because they were not Transdev employees. Davi paid the MTA Plaintiffs for the time they were in training,[94] in accordance with Davi payroll procedures.[95]

---

[85] Ex. 2 (V. Haney Dep.) at 158:3-10; Ex. 15 (S. Miller Dep.) at 138:14-16; Ex. 45 (A. Whitley Dep.) at 29:20-23.

[86] Ex. 2 (V. Haney Dep.) at 159:3-12; Ex. 17 (C. Collins Dep.) at 62:4-11; Ex. 45 (A. Whitley Dep.) at 30:15-17.

[87] Ex. 39 (S. Sousa Dep.) at 67:16-22; Ex. 3 (MTA Contract) at McCoy_Transdev017366.

[88] Ex. 3 (MTA Contract) at McCoy_Transdev017366.

[89] Ex. 13 (Teresa Miles Dep.) 51:15-18; Ex. 27 (D. Banks Dep.) at 148:4-10.

[90] Ex. 27 (D. Banks Dep.) at 228:14-229:5.

[91] Ex. 10 (A. Bluiett Dep.) at 63:15-23; Ex. 12 (D. Massie Jr. Dep.) at 81:17-82:7.

[92] Ex. 9 (J. Price Dep.) at 34:9-16.

[93] Ex. 23 (Email from James Davis to Transdev requesting Davi drivers be included in the 'Word Class Customer Training' and CPR training) at McCoy_Transdev001834.

[94] Ex. 46 (S. Miller RFA) at No. 3; Ex. 47 (A. Bluiett RFA) at No. 2.

[95] Ex. 13 (Teresa Miles Dep.) at 96:13-18; Ex. 10 (A. Bluiett Dep.) at 23:11-15.

**G. Davi set Plaintiffs hours, and MTA and BCHD (*via* Trapeze) created the manifests.**

The City of Baltimore and Maryland both required the use of software – Trapeze – to generate driver manifests.[96]

### i. BCHD Contract

Under the BCHD Contract, clients requested rides through the Baltimore City Health Department.[97] BCHD provided Transdev with a list of clients that needed transportation services on the night before.[98]

On the night before providing service, Davi sent Transdev its drivers' availability for the next day.[99] For example, Davi may state that it was "providing two runs and two routes with the times of 0400 to 1530 and 0930 to 1430."[100] This meant that Davi had two drivers that were available from 4:00 AM to 3:30 PM, and 9:30 AM to 2:30 PM on the next day. Based on Davi's stated availability, Trapeze would create manifests.[101] Notably, in prior litigation against Davi and Transdev, Plaintiffs' counsel conceded that Davi, not Transdev, "determined which drivers were assigned daily routes" and required drivers to "follow a Driver Manifest, which detailed the [drivers'] routes."[102]

---

[96] Ex. 2 (V. Haney Dep.) at 48:22; Ex. 45 (A. Whitley Dep.) at 33:18.

[97] Ex. 6 (S. Forman Dep.) at 100:8-9.

[98] Ex. 1 (BCHD Contract) at McCoy_Transdev017878; *see also* Ex. 6 (S. Forman Dep. ) at 66:2-8, 100:16-18.

[99] Ex. 6 (S. Forman Dep.) at 176:22- 180:5; Ex. 25 (Email from James Davis to inform Transdev of the drivers' availabilities) at McCoy_Transdev005187-5189.

[100] Ex. 6 (S. Forman Dep.) at 179:3-179:4.

[101] Ex. 6 (S. Forman Dep.) at 112:5-6, 17.

[102] Motion for Default Judgment at 5, fn. 4, *Gaither v. Davi Transp. Servs., LLC*, Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432 (D. Md. May 22, 2020)( "Davi Transportation, through its owner, hired and fired employees, set compensation policies, issued paychecks, and determined which drivers were assigned which daily routes. Davi Transportation required

BCHD Plaintiffs printed out or picked up their manifests when they arrived at Davi's facility;[103] on rare occasions, the BCHD Plaintiffs went to Transdev's facility to pick up their manifests.[104] At the end of the shift, the BCHD Plaintiffs turned in their driver manifests to Davi.[105]

### ii.    MTA Contract

MTA is responsible for the in-take of all trip reservations and trip scheduling (using the Trapeze software). MTA sent manifests to Transdev through the Trapeze system each night by 10:00 PM,[106] and Transdev optimized the runs.[107] Transdev allowed its drivers, who were all members of a union[108], to pick their schedule based on their seniority.[109] However, Davi assigned runs to drivers based on their availability.[110] After each shift, Transdev was required to submit completed driver manifests to MTA.[111] MTA Plaintiffs also submitted a copy of their driver manifests directly to Davi.[112]

---

Plaintiffs to follow 'a Driver Manifest,' which detailed the Plaintiffs' routes, owned the vehicles operated by Plaintiffs, and required Plaintiffs to follow strict policies throughout the course of each shift.")(internal citations omitted).

[103] Ex. 16 (T. White Dep.) at 55:23

[104] Ex. 18 (J. Goodman Dep.) at 29:16-20

[105] Ex. 14 (M. Jones Dep.) at 116:2-3; Ex. 18 (J. Goodman Dep.) at 40:20-22

[106] Ex. 2 (V. Haney Dep.) at 73:2-25, 145:10-12; Ex. 3 (MTA Contract) at McCoy_Transdev017382.

[107] Ex. 2 (V. Haney Dep.) at 58:23-59:9.

[108] *Id*. at 78:3-4.

[109] *Id*. at 77:8-11.

[110] *Id*. at 77:21-79:23; Ex. (Text Message with Ann Brown) at P001503.

[111] Ex. 2 (V. Haney Dep) at 153:6-8; Ex. 3 (MTA Contract) at McCoy_Transdev017368.

[112] Ex. 18 (J. Goodman Dep.) at 30:13-17.

16

**H.    Transdev was only involved in Plaintiffs' daily routine, if at all, to the extent required under the BCHD and MTA Contracts.**

*i.    BCHD Contract*

BCHD Plaintiffs testified that they started their day by arriving at Davi's Owings Mill facility.[113] Plaintiffs picked up their manifest, keys, and Nextel walkie-talkie, and then headed to their Davi-owned vehicles.[114]  The walkie-talkies were provided by Davi,[115] and were used to communicate with Mr. Davis or Davi.[116] Upon arriving at their vehicles, Davi required that the BCHD Plaintiffs perform a pre-trip inspection of the vehicle; this took about five minutes.[117]

After completing their pre-trip inspection, the Davi-BCHD Operator began performing the manifest. Upon arrival at the passenger's location, BCHD required drivers to wait five minutes after knocking on the passenger's door.[118] If the passenger is a no-show, the driver was to keep record of the date and time of the attempted pickup at the front door. *Id*. Admittedly, drivers were in communication with Transdev dispatchers throughout their shifts.[119] This was required by BCHD, as BCHD required Transdev to coordinate and dispatch from a central location. [120]

At the end of their shift, the BCHD Plaintiffs fueled their vehicles, if necessary, which was paid by Davi.[121] Once the Plaintiffs finished with their manifest, they would return back to Davi's Owing Mills facility. [122] Notably, in prior litigation against Davi and Transdev, Plaintiffs' counsel

---

[113] Ex. 18 (J. Goodman Dep.) at 29:14; Ex. 14 (M. Jones Dep.) at 46:5.

[114] Ex. 18 (J. Goodman Dep.) at 29:14.

[115] Ex. 10 (A. Bluiett Dep.) at 57:4-6; Ex. 18 (J. Goodman) at 29:10.

[116] Ex. 10 (A. Bluiett Dep.) at 57:9-12.

[117] Ex. 18 (J. Goodman Dep.) at 39:17-40:20; Ex. 11 (C. Jones Dep.) at 37:13-17.

[118] Ex. 1 (BCHD Contract) at McCoy_Transdev017879.

[119] Ex. 18 (J. Goodman Dep.) at 57:10-15.

[120] Ex. 1 (BCHD Contract) at McCoy_Transdev017877.

[121] Ex. 18 (J. Goodman) at 29:13, 21-22; Ex. 11 (C. Jones Dep.) at 44:12-19; Ex. 16 (T. White Dep.) at 60:4-14.

[122] Ex. 18 (J. Goodman) at 44:9-10; Ex. 11 (C. Jones Dep.) at 43:20-23.

conceded that Davi, not Transdev, "required Plaintiffs to follow strict policies throughout the course of each shift."[123]

   ii. *MTA Contract*

Under the MTA contract, Transdev was required to provide starters or window dispatchers to ensure coverage for the services provided under the MTA Contract.[124] The MTA contract also required Transdev to have dispatchers, who were responsible for managing the runs for the drivers.[125] Dispatchers were required by the MTA to perform the following duties: (1) provide electronic manifests to the drivers; (2) optimize trips by moving trips assigned as needed; (3) authorize drivers to mark passengers as no-show and depart from the pick-up location with MTA approval; (4) inform drivers of any changes (e.g. add-ons, cancels, changes) to their manifests;(5) receive information from drivers regarding incidents, accidents or traffic delays; (6) assist drivers as needed; (7) maintain MTA on-time performance standard. [126] Transdev was contractually precluded from subcontracting out the dispatch function.[127] As such, MTA Plaintiffs were required to communicate with Transdev dispatchers throughout their shifts regarding these items. However,

---

[123] Motion for Default Judgment at 5, fn. 4, *Gaither v. Davi Transp. Servs., LLC*, Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432 (D. Md. May 22, 2020)( "Davi Transportation, through its owner, hired and fired employees, set compensation policies, issued paychecks, and determined which drivers were assigned which daily routes. Davi Transportation required Plaintiffs to follow 'a Driver Manifest,' which detailed the Plaintiffs' routes, owned the vehicles operated by Plaintiffs, and required Plaintiffs to follow strict policies throughout the course of each shift.")(internal citations omitted).

[124] Ex. 3 (MTA Contract) at McCoy_Transdev017372 ("The Contractor shall provide adequate starters or window dispatchers to ensure coverage from one hour before the start of the service and throughout all hours of service provided under this contract.").

[125] *Id.* at McCoy_Transdev017364.

[126] *Id.*

[127] *Id.*

the dispatchers did not know the MTA Plaintiffs by name, and only addressed the Plaintiffs by their driver numbers.[128]

MTA Plaintiffs testified that they started their day at Transdev's Wicomico facility.[129] According to MTA, Davi drivers were prohibited from pulling out from other locations or reporting to starters, other than at the Transdev facility.[130]  Plaintiffs picked up their manifests from starters or window dispatchers at the window.[131] Then Plaintiffs would head to their assigned MTA vehicle, and perform a pre-trip inspection of the vehicle, as required by the MTA.[132]

MTA required all drivers to log into the MDC/Ranger prior to their start time and upon arrival at the location to pick up the passenger.[133] If a passenger did not arrive, then the driver was required to contact the dispatcher to report the trip as a "no show," and seek approval to proceed to the next stop.[134] This was also an MTA requirement.[135] And MTA installed surveillance functions in the vehicles to monitor drivers and passenger activities.[136]

When Plaintiffs needed to fuel the vehicle, they would go to the gas station at Transdev's facility.[137] Transdev was responsible for fueling the vehicles as MTA reimbursed Transdev for the

---

[128] Ex. 10 (A. Bluiett Dep.) at 36:22-24

[129] Ex. 14 (M. Jones Dep.) at 46:25-47:3; Ex. 10(A. Bluiett Dep.) at 23:5-7; Ex. 12 (D. Massie Dep.) at 40:19-20; Ex. 13 (Teresa Miles Dep.) at 56:11-15; Ex. 15 (S. Miller Dep.) at 52:20-21.

[130] Ex. 3 (MTA Contract) at McCoy_Transdev017366. "Subcontractor operators shall not pull out from different locations or report to other starters or managers."

[131] Ex. 10 (A. Bluiett Dep.) at 28:20-29:1.

[132] Ex. 3 (MTA Contract) at McCoy_Transdev017383. "Each Operator shall conduct a complete daily pre-trip and post-trip inspection specified by the MTA and documented on an MTA specified form."; Ex. 10 (A. Bluiett Dep.) at 29:12-19; Ex. 13 (Teresa Miles Dep.) at 60:9-61:4; 15 (Ex. S. Miller Dep.) at 55:12-56:1.

[133] Ex. 3 (MTA Contract) at McCoy_Transdev017383.

[134] *Id.* at McCoy_Transdev017384.

[135] *Id.* at McCoy_Transdev017383. "MCC shall direct the Operator to mark the passenger as no-show and proceed to the next stop."

[136] *Id.* at McCoy_Transdev017390.

[137] Ex. 11 (C. Collins Dep.) at 50:24-51:10.

costs of the fuel.[138] Transdev was not allowed to charge or require Davi to pay for fueling the MTA vehicles. [139]

MTA required Transdev to report all accidents to the MTA using the form specified by the MTA.[140] Transdev, through its dispatchers, were required to provide all reports of the accidents to MTA, and ensure the driver involved in the accident was available for interview by the MTA. *Id*. All decisions, including the status of the accident, were made by MTA. *Id*. Also, MTA required Transdev to provide full-time Road Supervisors who were responsible for monitoring and supervising on-the-street operations, including vehicle breakdowns, incidents and accidents.[141]

As such, when Plaintiffs were involved in an accident, they had to contact Transdev per MTA requirements.[142] Transdev's Road Supervisors then responded to the accident and investigated the accident.[143] Then Transdev submitted a competed written report of the accident to the MTA.

---

[138] Ex. 3 (MTA Contract) at McCoy_Transdev017393.

[139] *Id.* at McCoy_Transdev017394. "Contractor shall not charge or otherwise require any of its subcontractors to pay Contractor for fuel for revenue vehicles."

[140] Ex. 3 (MTA Contract) at McCoy_Transdev017387.

[141] *Id.* at McCoy_Transdev017372; Ex. 6 (S. Forman Dep) at 36:12-17; Ex. 2 (V. Haney Dep.) at 43:17-20 "main duty [of road supervisors] is to respond to accidents and incidents and do road observations."

[142] Ex. 3 (MTA Contract) at McCoy_Transdev017387-017388; Ex. 7 (MTA Subcontract) at McCoy_Transdev018326-018327; Ex. 5 (BCHD Subcontract) at McCoy_Transdev001857 (providing that "[Davi] shall develop and implement an Accident Policy and Procedure which shall be approved by Veolia prior to implementation" and listing requirements); Ex. 2  (V. Haney Dep.) at 61:11-20; Ex. 6 (S. Forman Dep.) at 36:5-17; Ex. 14 (M. Jones Dep.) at 120:19-121:7 (communicated with Transdev after accident and submitted statement at Transdev's request); *id*. at 193:2-196:15 (called Transdev first following accident); Ex. 10 (A. Bluiett Dep.) at 68:6-69:2.

[143] Ex. 6 (S. Forman Dep.) at 79:11-18 (Transdev supervisor responded to accident)

### I.     MTA Plaintiffs wore Davi Uniforms.

Drivers under the MTA Contract were required to wear uniforms.[144] Specifically, MTA

required all drivers, including subcontractors and road supervisors, to wear dark pants, blue shirts,

and a vest with the contractor's name on it.[145] As such, Davi provided uniforms to its drivers,

including Plaintiffs.[146] Davi uniforms consisted of dark pants, light blue shirts, and vests, which

had the "Davi Transportation" logo on it.[147] When drivers left Davi, they turned in their uniforms

to Davi.[148] On the other hand, Transdev provided its drivers with Transdev uniforms, as set forth

in the Transdev Dress Code Policy, which included pants, shirts, shoes and vests.[149]

### J.     Davi solely performed ordinary employer functions, such as payroll, and Davi and MTA provided equipment.

It is undisputed that Davi was solely responsible for keeping employee files, establishing

Plaintiffs' pay rate and handling payroll.[150] Specifically, Davi issued[151] and distributed[152]

paychecks and provided 1099s[153] directly to Plaintiffs. As a matter of fact, in prior litigation against

---

[144] Ex. 3 (MTA Contract) at McCoy_Transdev017374.

[145] *Id.*

[146] Ex. 18 (J. Goodman Dep.) at 41:19-20; Ex. 10 (A. Bluiett Dep.) at 32:1-2; Ex. 17 (C. Collins Dep.) at 58:21-24; Ex. 12 (D. Massie Dep.) at 71:22-24; Ex. 16 (T. White Dep.) at 72:17-21.

[147] Ex. 18 (J. Goodman Dep.) at 41:21-24; Ex. 27 (D. Banks Dep.) at 81:7-13;  Ex. 10 (A. Bluiett Dep.) at 31:13-24; Ex. 16 (T. White Dep.) at 73:2-6.

[148] Ex. 18 (J. Goodman Dep.) at 42:14-16.

[149] Ex. 49 (Transdev Dress Code Policy) at McCoy_Transdev017280-017281

[150] Ex. 27 (D. Banks Dep.) at 129:10-15, 171:22-172:5, 179:24-180:5; Ex. 10 (A. Bluiett) at 48:20-23; Ex. 18 (J. Goodman Dep.) at 50:2-4; Ex. 11 (C. Jones Dep.) at 54:25-55:12; Ex. 14 (M. Jones Dep.) at 199:10-200:23; Ex. 13 (Teresa Miles Dep.) at 97:7-98:9; Ex. 15 (S. Miller Dep.) at 98:11-21; Ex. 9 (J. Price Dep.) at 66:4-16; Ex. 16 (T. White Dep.) at 86:15-87:11.

[151] Ex. 53 (Damon Massie Paystubs) at P001478-1479;

[152] Ex. 27 (Deandre Banks Dep.) at 126:25127:7 (stating that he was responsible for distributing paychecks to Davi drivers; Ex. 10 (A. Bluiett Dep.) at 77:6-11 (stating that someone from Davi would give her the paychecks);

[153] Ex. 11 (C. Collins Dep.) at 88:5-7 (stating she received 1099 from Davi); Ex. 18 (J. Goodman Dep.) at 50:19-21 (stating she received 1099 from Davi); Ex. 13 (Teresa Miles Dep.) at 115:23 (stating she received 1099 from Davi); Ex. 15 (Sa'Quan Miller Dep.) at 123:19-21 (stating he received 1099 from Davi); Ex. 14 (M. Jones Dep.) at 40:15-16 (stating that Davi drivers delivered checks to her).

Davi and Transdev, Plaintiffs' counsel conceded that Davi, not Transdev, "set compensation policies [and] issued paychecks"[154] In addition, Rebecca Jones (Mr. Davis' ex-wife) and subsequently, Belinda Tony (Mr. Davis current girlfriend) processed payroll for Davi for the BCHD and Hartford County Contracts.[155]

In or around 2018, Davi requested a $30,000 loan from Transdev to help alleviate cash-flow challenges.[156] Transdev obliged with the expectation that the loan would be repaid;[157] however, soon after Davi received the loan, it went out of business. Transdev is unaware how Davi allocated the loan, but at no time has Transdev ever paid Davi's workers compensation insurance, vehicle insurance, or payroll.[158]  And, Davi never shared its financial books with Transdev, so Transdev was uninformed of Davi's financial situation.[159]

Moreover, Plaintiffs received any equipment necessary to perform their jobs from either Davi or MTA. Under the BCHD contract, Plaintiffs drove vehicles owned by Davi.[160] Davi provided some, if not all, of its drivers with communication devices, like walkie-talkies or Nextel

---

[154] Motion for Default Judgment at 5, fn. 4, *Gaither v. Davi Transp. Servs., LLC*, Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432 (D. Md. May 22, 2020)( "Davi Transportation, through its owner, hired and fired employees, set compensation policies, issued paychecks, and determined which drivers were assigned which daily routes. Davi Transportation required Plaintiffs to follow 'a Driver Manifest,' which detailed the Plaintiffs' routes, owned the vehicles operated by Plaintiffs, and required Plaintiffs to follow strict policies throughout the course of each shift.")(internal citations omitted).

[155] Ex. 8 (R. Jones Dep.) at 56:10-57:17

[156] Ex. 45 (A. Whitley Dep.) a 127:1-131:18.

[157] *Id*. at 131:1-8.

[158] *Id.; Compare with* ECF 142-4 at fn. 17-18. Plaintiffs cite to Monica Jones deposition as evidence that Transdev "helped Davi with Payroll." *Id.* at fn.18. However, the deposition transcript merely reveals that Transdev would send Davi revenue service hours. Ex. 2 (V. Haney Dep.) at 99-100, 168:16-24.

[159] Ex. 6 (S. Forman Dep.) at 209:6-16

[160] Ex. 9 (J. Price Dep.) at 38:11-15 ("They were Davi-owned vehicles").

phones.[161] Contrary to Plaintiffs' assertions, no evidence suggests that any Davi vehicles utilized on the BCHD contract contained video cameras.

Under the MTA contract, Plaintiffs drove vehicles owned by MTA, which was required by MTA.[162] The MTA also required the use of surveillance cameras, and provided and required the use of Rangers.[163]  The Ranger system also had a GPS built in the unit, which tracked the location of the drivers, and when drivers arrived at a location, they would push a button on the Ranger that would record their time into Trapeze.[164]  Transdev did not provide any equipment to Plaintiffs.

## III.    LEGAL STANDARD

Transdev adopts the standard of review set forth by Plaintiffs' in their Motion for Summary Judgment. *See* ECF 156-1 at 31. Further, as explained by the Fourth Circuit: "The function of a motion for summary judgment is to 'smoke out' evidence to see if there is any case, i.e., any genuine dispute as to any material fact, and if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and providing speedy and efficient summary disposition." *Bland v. Norfolk & Southern Railroad Co*., 406 F.2d 863, 866 (4th Cir. 1996) (as quoted in

---

[161] Ex. 10 (A. Bluiett Dep.) at 55:19-24); Ex. 18 (J. Goodman Dep.) at 19:7-15; Ex. 6 (S. Forman Dep.) at 124:14-125:4 (subcontractors provided phones, radios, and Nextels to drivers for communication with dispatch)

[162] Ex. 2 (V. Haney Dep.) at 97:22- 98:3; Ex. 3 (MTA Contract) at McCoy_Transdev017389 ("The MTA shall decide on the allocation of the fleet amongst Contractors and shall provide vehicles to the Contractor to operate Mobility dedicated service . . .The vehicles are owned by MTA . . ."); Ex. 7 (MTA Subcontract) at McCoy_Transdev18320 ("[Davi] shall use the MTA owned vehicles for services contracted by the MTA, unless otherwise authorized in writing by MTA").

[163] Ex. 3 (MTA Contract) at McCoy_Transdev017390 ("The MTA requires the supply and installation by the Contractor of DriveCam surveillance cameras on board each vehicle for the safety and security of the customers and operator/drivers . . ."); *id.* at McCoy_Transdev017366 ("Communications equipment – MDCs/MDTs, Rangers, EZ Pass Tags and radios shall be initially supplied by the MTA.")

[164] Ex. 2 (V. Haney Dep.) at 51:9-17.

*McNeiry v. McGraw Hill*, 919 F. Supp. 853 (D.Md. 1995)). *See also Fidelity v. Grave-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987).

## IV.   ARGUMENT

### A.   Plaintiffs are not Transdev's employees under the FLSA, MWHL, and MWPCL.

It is axiomatic that for liability for violations of the FLSA, MWHL, or MWPCL to attach, an employment relationship between the Plaintiffs and Transdev must exist. When considering whether two or more entities are "joint employers" for purposes of FLSA, MWHL and MWPCL liability, the Fourth Circuit focuses on "the relative association or disassociation between entities with respect to establishing the essential terms and conditions of a worker's employment." *Salinas v. Commercial Interiors, Inc*., 848 F.3d 125, 141 (4th Cir. 2017). The "fundamental threshold question" in any joint employment case is "whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment." *Id*. at 142. To answer this "fundamental question," the Fourth Circuit has provided six factors to guide the analysis:

(1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried

24

out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id*. The Court emphasized that the six factors were not an exhaustive list of all potentially relevant considerations. *Id*. at 142. The inquiry is fact-specific, must be based on all the circumstances, and is focused on whether two or more entities are "not completely disassociated" with respect to a worker's entire employment. *Id*. Application of the joint employment test reveals that Transdev did not jointly employ Plaintiffs.

   i. *Transdev did not direct, control, or supervise Plaintiffs.*

Transdev did not direct, control, or supervise BCHD or MTA Plaintiffs, as set forth *supra* at II E-J. Plaintiffs argue that Transdev shared and allocated the power to direct, control, and supervise Plaintiffs jointly with Davi because: (1) dispatchers did not distinguish between Davi drivers and Transdev drivers; (2) Transdev required Plaintiffs to follow driver manifests, (3) dispatchers were in direct contact with Plaintiffs; (4) Transdev required vehicle inspections and other tasks; (5) all trips had to comply with the terms of Transdev's contract; and (6) Transdev dictated the personal appearances of Davi drivers. ECF 1561-1 at 35-36.

However, Plaintiffs fail to acknowledge that control and supervision were not imposed by Transdev, but were in fact contractually required by MTA and BCHD. *See supra* Section II.A. Transdev, in its role as the prime contractor, was simply tasked with ensuring that its subcontractors providing services for MTA and BCHD complied Contracts. *See Salinas*, 848 F.3d at 148 ("[E]ntity does not become a joint employer by engaging in the oversight necessary to ensure that a contractor's services meet contractual standards of quality and timeliness"); *Moreau v. Air France*, 343 F.3d 1179, 1188 (9th Cir. 2003)("indirect supervision or control . . . to ensure compliance with various safety and security regulations" was not  indicative of joint employment

25

when done "to verify that the task was done properly"); and *Ling Nan Zheng v. Liberty Apparel Co*., 355 F.3d 61, 74-75 (2d Cir. 2003) (although "extensive supervision of a plaintiff's work is indicative of an employment relationship," "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry").

Courts have held that performance of quality control functions are not indicative of a joint employment relationship. *See, e.g., Jacobson v. Comcast Corp*., 740 F. Supp. 2d 683, 690 (D. Md. 2010) ("[D]etailed instructions and a strict quality control mechanism will not, on their own, indicate an employment relationship"); *Moreau*, 343 F.3d at 1188 (9th Cir. 2003) (supervision of workers not indicative of joint employment where principal merely gave "specific instructions to a service provider" concerning performance under a service contract).

Here, Transdev operated under the strict requirements set forth by BCHD and MTA. First, the dispatchers were required by BCHD and MTA to manage the runs. Under the BCHD Contract, Transdev was required to have dispatchers at a centralized location. *See supra* at II.H. *i*.  The MTA Contract required Transdev to have dispatchers, and required them to communicate with Plaintiffs through the MTA provided two-way radio systems. *See supra* at II. H. *ii*.

Second, MTA, not Transdev, required all drivers, including subcontractors and road supervisors, to wear dark pants, blue shirts, and a vest with the contractor's name on it. *See supra* at II.I As such, Davi provided Plaintiffs with uniforms with a "Davi Transportation" logo and Transdev provided its employees with uniforms with a "Transdev" logo. *Id*.

Third, all drivers under the BCHD and MTA Contracts were provided with driver manifests. However, these driver manifests were generated by BCHD and MTA via the Trapeze system, and Davi dictated Plaintiffs' availability to perform the manifests. *See supra* at II. G.

26

Fourth, Davi had its own supervisors that supervised the work of Plaintiffs. For instance Deandre Banks was hired by Davi and was responsible for monitoring attendance at training and distributing paychecks, distributing and collecting manifests to and from Plaintiffs, and communicating with Plaintiffs to ensure they were doing their jobs properly. *See supra* at II.C.*i*. Mr. Banks reported to Ann Brown, who was his step-aunt, direct supervisor and also an employee of Davi. Ms. Brown also supervised Plaintiffs, especially when Plaintiffs' were unable to contact Mr. Davis; Ms. Brown was the next point of contact at Davi.[165]

Plaintiffs reliance on *Lima v. MH & WH, LLC*, 372 F. Supp. 3d 317, 346 (E.D.N.C. 2019) and *Young v. Act Fast Delivery of W. Va., Inc.*, No. 5:16-cv-09788, 2018 U.S. Dist. LEXIS 682, at \*20 (S.D. W. Va. Jan. 3, 2018) is inapposite because Davi set Plaintiffs' schedule, and because BCHD and MTA set the requirements of the job; rather, Transdev merely performed quality control to ensure service was timely.

Also, Transdev did not direct, control or supervise Mr. Banks. Mr. Banks was hired directly by Davi to work solely on the MTA subcontract. *See supra* at II.C.*i*. Mr. Banks supervised Plaintiffs' work on the MTA Contract. *Id*. Even though Mr. Banks often worked at Transdev's Wicomico facility after February 2017, Transdev employees did not know when he arrived or when he departed. *Id*. Mr. Banks resigned from Davi in December 2017. *Id*.

The evidence clearly shows that Transdev did not direct, control, or supervise any of the Plaintiffs, including Deandre Banks.

### ii. *Transdev did not hire or fire Plaintiffs.*

The BCHD Plaintiffs concede that they were directly hired by Davi and that either Davi terminated their employment, or that they each resigned directly with Davi. *See supra* at II.E.*i*.

---

[165] Ex. 17 (C. Collins Dep.) at 32:11-32:14

The MTA Plaintiffs, except Damon Massie Jr., concede that they were directly hired by Davi. *See supra* at II.E.*ii*. Further, all of the MTA Plaintiffs, but for Sa'Quan Miller testified that they either terminated their employment voluntarily or involuntarily directly with Davi. Deandre Banks also testified that he was hired by Davi, and resigned from Davi. *See supra* II.C.*i.* Simply put, Transdev did not hire or fire any of the Plaintiffs.

Plaintiffs reliance on *Lima*, 372 F. Supp. 3d at 347 and *Young,* 2018 U.S. Dist. LEXIS 682 at *21 is inapposite because: (1) Plaintiffs have presented no evidence that Transdev hired, fired or modified the employment of any of the BCHD Plaintiffs, (2) BCHD and MTA set forth hiring requirements, (3) Davi set Plaintiffs' hours, and BCHD and MTA supplied the destinations,  and (4) because the evidence shows that Transdev's suggestion that Sa'Quan Miller no longer perform under the MTA Contract was based on requirements set forth by MTA.

### iii.    *Davi did not enjoy a permanent relationship with Transdev.*

Although Davi was one of Transdev's subcontractors, it was not required to solely perform work for Transdev. Davi also provided services to Hartford County and the general public. *See supra* at II.C. Plaintiffs' argument that Davi's subcontracts with Transdev were the vast majority of Davi's business is purely speculative and unsupported by the evidence. Plaintiffs testified they "rarely [saw each] other" given their different shifts, and that they largely did not know each other. *See supra* II.C. The fact that Davi's business was in "high demand," and that it provided services to entities other than Transdev demonstrates that Davi was not completely dependent on Transdev. *Young v. Act Fast Delivery of W. Va., Inc*., No. 5:16-cv-09788, 2018 U.S. Dist. LEXIS 682, at *22 (S.D. W. Va. Jan. 3, 2018)(joint employment exists when "[direct employer] was almost completely dependent on [putative joint employer] for its business").

Moreover, despite Plaintiffs' contentions, Transdev never paid for Davi's workers' compensation insurance, vehicle insurance, and other "managerial fees." *See supra* at II.J. Davi acknowledged it was responsible for its own payroll, and that Transdev did not have any contractual obligations to Davi's employees. *See supra* at II.B.

### iv.    *Transdev did not have direct or indirect ownership interest, or have control over Davi.*

Although Plaintiffs concede this factor, Transdev emphasizes that it did not have any direct or indirect ownership of Davi, nor did it have control over Davi. Transdev and Davi are clearly separate entities, and had mere contractual relationships.

### v.    *Plaintiffs performed work on the open road.*

That vast majority of Plaintiffs' time was spent performing their manifests in either a Davi or MTA owned vehicle. *See supra* at II.H. Plaintiffs argue – albeit inaccurately – that Transdev had control over the premises where the work was performed. First, under the BCHD Contract, Plaintiffs concede that they started and ended their day at Davi's facility. *See supra* at II.H. The only time Plaintiffs went to Transdev's facility was to pick up their driver manifests, on the rare occasion that their manifest was unavailable at Davi. *See supra* at II.G.*i*. Next, Plaintiffs' under the MTA Contract started their shifts at Transdev's facility, but this was because MTA prohibited Davi drivers from pulling out from any locations other than the Transdev facility. *See supra* at II.H.*ii*. However, Plaintiffs spent less than 15 minutes at Transdev's facility before they departed to pick up their first passenger. [166] Thus, the total amount of time Plaintiffs spent at either Transdev

---

[166] Ex. 17 (C. Collins Dep.) at 48:6-48:6 "Had 12 minutes before exit the lot."; Ex. 11 (C. Jones Dep.) at 37:13-17  "Less than 5 minutes"; Ex. 14 (M. Jones Dep.) at 141:11-17 "get 10 or 15 minutes from the time that you're due in to be out of the parking lot"; Ex. 12 (D. Massie Jr. Dep.) at 43:6-11 "15-20 mins max"; Ex. 13 (Teresa Miles Dep.) at 60:2-4 "I'll have about 15 minutes to do my pre-trip"; Ex. 15 (S. Miller Dep.) at 56:21 "Pre-trip usually takes 10 to 15 minutes"; Ex. 16 (T. White Dep.) at 56:15-20 "Can take probably at most 10 minutes"

facility was *de minimis*. Further, BCHD Plaintiffs drove vehicles owned by Davi, and MTA Plaintiffs drove vehicles owned by MTA, which was required pursuant to the MTA Contract. *See supra* at II.H. *Elsayed v. Family Fare LLC,* No. 1:18-cv-1045, 2020 U.S. Dist. LEXIS 27064, at *17 (M.D.N.C. Feb. 18, 2020)( joint employment relationship exists where work is performed on a premises owned or controlled by the putative joint employers).

And, even though Deandre Banks often reported to Transdev's facility after February 2017, Mr. Banks role was to oversee the Davi drivers on behalf of Davi. *See* supra at II.C.*i*.

> vi.   *Transdev did not share or allocate responsibility over functions ordinarily carried out by an employer and Davi independently handled payroll and taxes, and provided equipment and materials necessary to Plaintiffs.*

Davi performed all ordinary employer functions. *See* supra at II.J. However, Plaintiffs argue that Transdev shared responsibility with Davi over functions ordinarily carried out by an employer, such as providing office space, providing vehicles and all equipment for Plaintiffs to use under the MTA Contract and providing driver manifests to Plaintiffs. Plaintiffs further contend that for a period of time, Transdev paid Davi's workers' compensation insurance, vehicle insurance, and other "managerial fees." The evidence does not support Plaintiffs' contentions.

First, Transdev provided office space to its subcontractors, including Davi, for their convenience.[167] Davi's office space was located in the back of the building,[168] while Transdev employees were located in the front of the building.[169] Also, Transdev was not aware when Davi employees were in and out of the office. *See supra* at II.C.*i*. Second, under the MTA Contract, Plaintiffs drove vehicles owned by MTA, which were equipped with surveillance cameras, two-way radios, EZ pass tags and a MDC/Ranger system, all provided and/or required by MTA. *See*

---

[167] Ex. 39 (S. Sousa Dep.) at 98:3-5
[168] Ex. 27 (D. Banks Dep.) at 144:13-15
[169] *Id*. 144:9-11

*supra* at II.H.*ii*. Transdev did not provide any equipment to Plaintiffs. *See supra* at II.J.  Next, driver manifests were generated by BCHD and MTA through the Trapeze system. *See supra* at II.G. Under BCHD, drivers would pick up their driver manifests at Davi's facility, or on exception at Transdev. *See supra* at II.H. For the MTA Contract, Plaintiffs were required by MTA to pick up their manifests from the starter or window dispatcher at Transdev. *Id*. However, after each shift, Plaintiffs submitted their manifests to Davi. *See supra* at II.G. Lastly, Transdev never paid Davi's workers compensation insurance, vehicle insurance, or payroll. In fact, Transdev did not have any knowledge of Davi's financial status as Davi never shared its financial books with Transdev. *See supra* at II.J. In or around 2018, Transdev loaned Davi $30,000 to help alleviate cash-flow challenges; but Transdev is unaware how Davi allocated the funds, and shortly after the loan, Davi went out of business. *Id*.

So, the undisputed facts are inconsistent with the existence of an employer-employee relationship between Plaintiffs and Transdev. However, the record clearly shows that Plaintiffs were employed solely by Davi, and Transdev was not Plaintiffs' joint employer. Thus, Transdev is entitled to summary judgment that it is not liable to Plaintiffs under the FLSA, MWHL, and MWPCL.

> **B.** **Monica Jones and Deandre Banks are precluded from coverage under the MWHL.**

The MWHL does not apply to an individual who "is a child, parent, spouse, or other member of the immediate family of the employer." Md. LABOR AND EMPLOYMENT Code Ann. § 3-403(6). The regulations clarify that "child," as used in the MWHL, "means a . . . stepchild. . ." COMAR 09.12.41.11. Here, despite Deandre Banks' perjured testimony to the contrary, it is

undisputed that both Monica Jones and Deandre Banks are James Davis' stepchildren.[170] Thus, Transdev is entitled to summary judgment in its favor on Monica Jones and Deandre Banks' MWHL claims.

### C.  MTA Plaintiffs are not Transdev's employees under the MLWL.

The MLWL requires that "an **employer** subject to this title shall pay each **employee** [a living wage]." Md. Code Ann., State Fin. & Proc. § 18-103 (emphasis added).  "Employer means a contractor or subcontractor . . ." *Id.* at § 18-103(c); *see also* COMAR 21.11.10.01 (B)(2). And "employee" is defined as:

> an individual who satisfies the criteria of the employer-employee relationship test which examines:
> (a) If the employer has the power to select and hire the employee;
> (b) If the employer pays the employee wages;
> (c) If the employer has the power to discharge the employee;
> (d) If the employer has the power to control the employee's conduct; and
> (e) If the work is part of the regular business of the employer.

COMAR 21.11.10.01(B)(1). Plaintiffs assume that they are Transdev's employees under MLWL,[171] without ever engaging with the aforementioned test. ECF 156-1 at 51 - 54.[172]  Notably, this test is conjunctive. Transdev has never disputed that it is bound by the MLWL **with respect to its own employees**.[173] However, as explained *supra*, Transdev did not select and hire MTA

---

[170] Ex. 15 (S. Miller Dep.) at 42:18-43:2; Ex. 14 (M. Jones Dep.) at 66:22-67:14; Ex. 24 (D. Banks Text Messages) at P001717; Ex. 28 (D. Banks Decl.) at ¶ 9.

[171] Transdev disputes Plaintiffs' assertion that "the MLWL imposes on contractors such as Transdev the burden of ensuring that workers employed directly by subcontractors are paid in accordance with the law." ECF 156-1 at 52. Rather, Transdev was required to submit Davi's payroll records, and Davi was required to certify the accuracy of the records. COMAR 21.11.10.05(C), (E).

[172] Transdev is unaware of any case law establishing that Maryland adopts the Fourth Circuit's joint employer test to analyze an employer-employee relationship under the MLWL.

[173] *See* Transdev Answer, ECF No. 15 ¶ 31; Ex. 2 (V. Haney Dep.) at 81:22-24.

Plaintiffs, pay their wages, have the power to discharge MTA Plaintiffs, or control MTA Plaintiffs' conduct. *See supra* at II.E-J. While Transdev concedes that the MTA Plaintiffs work was a part of its regular business, this single factor does not tilt the test towards employment by Transdev. Simply put, MTA Plaintiffs were not Transdev's employees under COMAR 21.11.10.01(B)(1). MTA Plaintiffs were solely employed by Davi, Transdev's subcontractor, and Transdev is not Plaintiffs' employer for purposes of the MLWL.

Plaintiffs' proposition that Transdev acted as a type of guarantor of Davi's payment obligations is untenable. ECF 156-1 at 51-55. Despite MLWL's reporting requirements, the MLWL, and its supporting regulations, are clear and unambiguous in that Transdev is only required to pay its own employees. Md. Code Ann., State Fin. & Proc. § 18-103. "[W]here the language is clear and unambiguous, a court may not add or delete words to make a statute reflect an intent not evidenced in that language." *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 758 (1993). In this case, interpreting the term "employer" to construe Transdev as a guarantor of its subcontractors would mean adding language to the statute so as to reflect an intent clearly not contemplated by the statute. *See e.g., Watkins v. C. Earl Brown, Inc.*, 173 F. Supp. 2d 409, 414 (D. Md. 2001).

For the forgoing reasons, Transdev is entitled to summary judgment that it is not liable to the MTA Plaintiffs under the MLWL.

### D.     Most of the MTA Plaintiffs are precluded from coverage under the MLWL.

Even assuming *arguendo* that MTA Plaintiffs are Transdev's employees under the MLWL, which Transdev refutes, most are precluded from its scope. Specifically, the MLWL does not apply to an employee that "works less than 13 consecutive weeks for the duration of a contract subject to this title and during that period works full time." Md. Code Ann., State Fin. & Proc. § 18-

33

102(a)(2)(ii). Here, six MTA Plaintiffs worked under the MTA contract for less than 13 weeks, and one Plaintiff did not work under the MTA contract at all. *See* supra at II.D. Thus, Transdev is entitled to summary judgment that it is not liable to Danielle McCoy, Tyree Miles, Ayana Bluiett, Christina Collins, Damon Massie, Jr., Teresa Miles, and Jawhann Price under the MLWL.

### E.    Plaintiffs are not intended beneficiaries under the MTA and BCHD Contracts.

Plaintiffs concede that they are not parties to either the MTA or BCHD Contracts. ECF 156-1 at 57-62. Thus, in order to enforce the MTA and BCHD Contracts against Transdev, Plaintiffs must be intended beneficiaries. Contrary to Plaintiffs' assertion,[174] they are not.

Maryland takes a cautious approach to third-party enforcement of a contract. *Turner Constr. Co. v. BFPE Int'l, Inc.*, No. JKB-15-368, 2016 U.S. Dist. LEXIS 39161, at \*43 n.27 (D. Md. Mar. 25, 2016); *Amaya v. DGS Constr.*, LLC, Civil Action No. TDC-16-3350, 2019 U.S. Dist. LEXIS 142490, at \*13 (D. Md. Aug. 19, 2019) (quoting *CX Reinsurance Co., Ltd. v. Levitas*, 207 F. Supp. 3d 566, 570) (D. Md. 2016), aff'd, 691 F. App'x 130 (4th Cir. 2017) ("Maryland law is quite restrictive on the issue of whether one may be considered a third-party beneficiary.")

> An individual is a third-party beneficiary to a contract if the contract was intended for his or her benefit and it clearly appears that the parties **intended** to recognize him or her as the primary party in interest and as privy to the promise. It is not enough that the contract merely operates to an individual's benefit: An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.

*CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 56 A.3d 170, 212 (Md. 2012) (quoting *120 W. Fayette Street, LLP v. Mayor & City Council of Balt*., 426 Md. 14, 43 A.3d 355, 368 (Md. 2012) (emphasis added). This burden is heightened where the government is a contracting party, as third-party beneficiaries "are generally assumed to be merely incidental beneficiaries and may

---

[174] ECF 156-1 at 58-62.

not enforce the contract absent **clear intent** to the contrary." *Wm. T. Burnett Holding LLC v. Berg Bros. Co.*, 235 Md. App. 204, 217 (2017)(emphasis added). In determining whether that standard is met, the court looks to "the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention." *CR-RSC Tower*, 429 Md. at 458.

In this case, the MTA and BCHD Contracts do not indicate any intent, let alone a "clear intent," that Plaintiffs are intended beneficiaries. Notably, the contracts are between Transdev and BCHD and MTA. The purpose of the BCHD contract is to provide "medical transportation services . . . to the City of Baltimore . . ."[175] Likewise the purpose of the MTA contract is to "operate an ADA paratransit services for Mobility Program . . . [and to] transport rider in accordance with MTA's instructions.[176] *See, Contracts* generally. Neither agreements designate Plaintiffs as intended beneficiaries or provide them with any enforcement mechanisms. *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 655, 46 A.3d 473, 485 (2012)(considering whether contract includes enforcement mechanisms when analyzing intended beneficiary status). Although both the MTA and BCHD Contracts refer to the respective Living Wage Act and Ordinance for both Maryland and Baltimore,[177] this does not reflect, as Plaintiffs posit, the parties' intent to create intended beneficiaries; but rather reflects the already-codified requirement that the parties adhere to state law and city code. Plaintiffs highlight that both the MTA and BCHD Contracts include affidavits requiring compliance with MTA and BCHD. ECF 156-1 at 59, 61.

---

[175] Ex. 1 (BCHD Contract) at McCoy_Transdev017871.

[176] Ex. 3 (MTA Contract) at McCoy_Transdev017340.

[177] Ex. 57 (BCHD Affidavit of Agreement) at P000812; Ex 3 (MTA Contract) at McCoy_Transdev017839-017843.

However, the MTA and BCHD affidavits are part and parcel with their respective contracts, and cannot be deemed separate, enforceable agreements, because there is no separate consideration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 424, 87 S. Ct. 1801, 1816 (1967)("Whether a number of promises constitute one contract [and are non-separable] or more than one is to be determined by inquiring whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.").

At bottom, Plaintiffs' breach of contract claims impermissibly seek to make an end-run around the enforcement mechanisms already set forth in the MLWL and the Baltimore City Living Wage Ordinance ("BCLWO"). As set forth *supra* at IV.A, sinc Plaintiffs are solely Davi's employees, Transdev did not breach any contract requiring enforcement of MLWL and BCLWO. Notwithstanding, Plaintiffs' breach of contract claim with regard to the BCHD Contract is especially troublesome because the living wage ordinance Plaintiffs seek to enforce contains no private right of action. *See infra* at V.D. *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 U.S. Dist. LEXIS 86077, at *24 (D. Md. Aug. 4, 2011) citing *Astra USA, Inc. v. Santa Clara Cty.*, 563 U.S. 110, 118, 131 S. Ct. 1342, 1348 (2011) ("[W]hen a government contract confirms a statutory obligation, a third-party private contract action to enforce that obligation would be inconsistent with the legislative scheme to the same extent as would a cause of action directly under the statute.").

Plaintiffs' reliance on *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1158, 78 Cal. Rptr. 3d 572, 581 (2008) and *Berry v. Transdev Servs.*, No. C15-1299-RAJ, 2017 U.S. Dist. LEXIS 58398, at *14 (W.D. Wash. Apr. 13, 2017) to establish Plaintiffs' third-party beneficiary status is unavailing. *Amaral* is distinguishable because: (1) it does not contemplate joint employment, (2)

36

is based on California law, and (3) the Hayward, California living wage ordinance that plaintiffs sought to enforce contained a private right of action, unlike the BCLWO. https://library.municode.com/ca/hayward/codes/municipal_code?nodeId=HAYWARD_MUNICI PAL_CODE_CH2GOAD_ART14HALIWAOR (§2-14.040(a)). Likewise, Berry is factually distinguishable because the purported joint employer solely controlled plaintiffs' breaks, and thus the court found that the plaintiffs were intended beneficiaries to defendant's contract with the government because their breaks were at the purported joint employer's "mercy." *Id.* at 15. Here, it is undisputed that Transdev did not pay Plaintiffs,[178] and Plaintiffs were subject to the mercy of Davi with regard to pay.

But, *Harris v. Med. Transp. Mgmt.*, 300 F. Supp. 3d 234 (D.D.C. 2018)[179] is particularly instructive as it examines the creation of intended beneficiaries in an alleged joint employer's non-emergency transportation contract with the government. In *Harris*, plaintiffs were drivers for a private company that contracted with the defendant – the alleged joint employer. *Id.* at 236. The defendant contracted with the District of Columbia to "manage and administer" non-emergency transportation services for Medicaid recipients. *Id.* Plaintiffs claimed they were not paid in accordance with federal and local wage laws. *Id.* They brought an FLSA claim and also advanced a breach of contract claim. *Id.* With regard to the breach of contract claim, the *Harris* plaintiffs relied on the defendant's contract with the District of Columbia requiring compliance with the

---

[178] Ex. 27 (D. Banks Dep.) at 179:24-180:5; Ex. 10 (A. Bluiett) at 48:20-23; Ex. 18 (J. Goodman Dep.) at 50:2-4; Ex. 11 (C. Jones Dep.) at 54:25-55:12; Ex. 14 (M. Jones Dep.) at 199:10-200:23; Ex. 13 (Teresa Miles Dep.) at 97:7-98:9; Ex. 15 (S. Miller Dep.) at 98:11-21; Ex. 9 (J. Price Dep.) at 66:4-16; Ex. 16 (T. White Dep.) at 86:15-87:11.

[179] The District of Columbia takes the same cautious approach to third-party beneficiary contract enforcement as Maryland, and indeed Maryland courts have relied on case law from the District of Columbia regarding third-party beneficiary contract enforcement. *See e.g., Wm. T. Burnett Holding LLC*., 235 Md. App. at 217.

Living Wage Act to show that they were intended beneficiaries. The court rejected this argument, concluding:

> Plaintiffs here have failed to show the contracting parties clearly intended for them to be beneficiaries of the Contract. The provisions on which Plaintiffs rely are not the result of the parties' arms-length negotiations, but rather are contained in the Contract because the Living Wage Act itself requires their inclusion. See D.C. Code § 2-220.04(a) (providing "[a]ll contracts and government assistance . . . shall include the requirements"). Indeed, the Contract incorporates the Act's provisions, including its exemptions, in full. Compare *id*. § 2-221.01 et seq., with Contract ¶¶ H.8 to H.8.9. Thus, the Contract's Living Wage Act requirements are not reflective of the parties' intent, but rather the City Council's. Plaintiffs therefore are not third-party beneficiaries who can enforce the Contract. Accordingly, Plaintiffs' breach-of-contract claim is dismissed.

*Id.* at 252-53.

In this case, the MTA and BCHD Contracts merely confirm preexisting statutory obligations, and thus were not included as result of the parties' arm-length negotiation. The parties had no clear intent[180] to make Plaintiffs intended beneficiaries to the MTA and BCHD. Thus, Transdev is entitled to summary judgment on Plaintiffs' breach of contract claims.

---

[180] Notably, Plaintiffs could have sought testimony from Transdev, MTA, and/or BCHD regarding their intent to create an intended beneficiary, but strategically did not. *Precision Small Engines, Inc. v. City of Coll. Park*, 457 Md. 573, 588, 179 A.3d 1019, 1027 (2018)("Assuming *arguendo* that an enforcement issue exists, the City and the County, as **parties** to the agreement, would be in the best position to dictate how to construe the terms of agreement and the appropriate **parties** to challenge the agreement, not Petitioners.")

## V.     OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.     Summary judgment for Plaintiffs is inappropriate because Transdev did not employ Plaintiffs jointly with Davi.

Plaintiffs argue that Transdev employed them jointly with Davi under the standard set forth in *Salinas*, 848 F.3d at 125-141. ECF 156-1 at 33-38. For the reasons set forth in IV.A, *supra*, Plaintiffs' bid for summary judgment fails.

### B.     Summary judgment for Plaintiffs is inappropriate because they were not Transdev's employees.

Transdev is not Plaintiffs' joint employer. *See supra* at IV.A, Given that Plaintiffs do not assert that Transdev was their direct employer, it is unnecessary to analyze whether Plaintiffs are employees or independent contractors under the FLSA.

### C.     Summary judgment for Plaintiffs is unwarranted because they fail to establish that they were not paid required minimum and overtime wages.

Transdev vehemently disputes that Plaintiffs were its employees. *See* IV.A, *supra*. However, should this Court find that Transdev was Plaintiffs' joint employer, Plaintiffs have the burden of establishing the hours they claimed to have worked but were not paid. *Whittaker v. David's Beautiful People, Inc*., Civil Action No. DKC 14-2483, 2016 U.S. Dist. LEXIS 13266, at *33-34 (D. Md. Feb. 4, 2016)**,** citing *McLaughlin v. Murphy*, 436 F.Supp.2d 732, 737 (D.Md. 2005) (analyzing an FLSA overtime and minimum wage claim), aff'd per curiam, 247 F.App'x 430 (4th Cir. 2007).  Notably, the Fourth Circuit's joint employer test inherently contemplates the possibility that a direct employer could have sole responsibility over ordinary employer functions such as record management and payroll. *Salinas*, 848 F.3d at 141-42 (4th Cir. 2017)(analyzing the extent of responsibility that putative joint employers have over ordinary employer functions under the sixth prong). In this case, it is undisputed that Davi was Plaintiffs' direct employer, and was

responsible for keeping employer files, establishing Plaintiffs' pay rate and handling payroll. *See supra* at II.K.[181] Plaintiffs have made no effort whatsoever to obtain pay records from Davi, despite the fact many of the Plaintiffs are related to James Davis in some way. *See supra* at II.C. Plaintiffs' testimony regarding hours worked and compensation is speculative, and general estimates are insufficient to substantiate their burden. *Whittaker*, 2016 U.S. Dist. LEXIS 13266, at *35 (D. Md. Feb. 4, 2016). Especially here, where Davi paid MTA Plaintiffs $13.63[182] per revenue hour – well above the minimum wage – it is conceivable that MTA Plaintiffs were adequately compensated for minimum wage and overtime when considering all hours worked. Thus, Plaintiffs are not entitled to summary judgment because they have not substantiated their burden that they were not paid the requisite minimum and overtime wages.

### D. Summary judgment for Plaintiffs is inappropriate because the MWPCL inapplicable.

The MWPCL entitles an employee to recovery of unpaid wages if two weeks "have elapsed from the date on which the employer is required to have paid the wages." Md. Code Ann., Lab. & Empl. § 3-507.2(a). Notably, "[t]he MWPCL does not focus on the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Craighead v. Full Citizenship of Md., Inc*., Civil Action No. 17-cv-595-PX, 2020 U.S. Dist. LEXIS 174747, at *15 (D. Md. Sep. 23, 2020)(internal citations omitted). Thus, in the motion to dismiss context, courts routinely hold that "an MWPCL claim cannot be sustained if the plaintiff fails to allege that the defendant was involved in payment of [his] wages." *Pridgen v. Appen Butler Hill, Inc*., No. JKB-18-61, 2019 U.S. Dist. LEXIS 35283,

---

[181] Transdev has competent records that establish the revenue hours that MTA Plaintiffs worked. *See e.g*., II.D, supra.

[182] Ex. 53 (Damon Massie Paystubs) at P001478-1479.

at \*13 (D. Md. Mar. 4, 2019); *Odjaghian v. EngagePoint, Inc*., No. JKB-18-0151, 2018 U.S. Dist. LEXIS 112367, at \*17 (D. Md. July 5, 2018)(same); *Quickley v. Univ. of Md. Med. Sys. Corp*., Civ. No. CCB-12-321, 2012 U.S. Dist. LEXIS 131280, 2012 WL 4069757, at \*6 (D. Md. Sept. 14, 2012) (citing *Jennings v. Rapid Response Delivery, Inc*., Civ. No. WDQ-11-92, 2011 U.S. Dist. LEXIS 65862, 2011 WL 2470483, at \*5 (D. Md. June 16, 2011)(same).

Here, not only does Plaintiffs' Complaint fail to allege that Transdev was involved in the payment of wages, *see* ECF 158 generally, but Plaintiffs are unable to point to any evidence that Transdev was involved in the payment of Plaintiffs wages. In fact, it is undisputed that Davi solely handled payment of Plaintiffs' wages.[183]  Thus, the MWPCL is wholly inapplicable to Plaintiffs' claims.

Moreover, Plaintiffs' attempt to sneak alleged violations of the MLWL and Baltimore City Living Wage Ordinance ("BCLWO") through the MWPC fail. The MWPCL is an ineligible vehicle for Plaintiffs claims under the MLWL and BCLWO. Transdev's counsel is unaware of any case law examining enforcement of the MLWL and BCLWO through the MWPCL. Notably, this court has previously declined to enforce the BCLWO through the MWPCL, and should decline to enforce both the MLWL and BCLWO through the MWPCL here. *Gaither v. Davi Transp. Servs*., LLC, Civil Action No. ELH-18-1447, 2020 U.S. Dist. LEXIS 90432, at \*23 (D. Md. May 22, 2020); *McCoy v. Transdev Servs*., Civil Action No. DKC 19-2137, 2021 U.S. Dist. LEXIS 48085, at \*28 (D. Md. Mar. 15, 2021)(stating it is unclear whether violation of the BCLWO "carry with it any additional potential damages").

---

[183] Ex. 6 (S. Forman Dep. ) at 188:2-13; Ex. 27 (D. Banks Dep.) at 179:24-180:5; Ex. 10 (A. Bluiett Dep.) at 48:20-23; Ex. 17 (C. Collins Dep.) at 27:22-28:13; Ex. 18 (J. Goodman Dep.) at 50:2-4; Ex. 11 (C. Jones Dep.) at 54:25-55:12; Ex. 14 (M. Jones Dep.) at 199:10-200:23; Ex. 13 (Teresa Miles Dep.) at 97:7-98:9; Ex. 15 (S. Miller Dep.) at 98:11-21; Ex. 9 (J. Price Dep.) at 66:4-16; Ex. 16 (T. White Dep.) at 86:15-87:11.

Plaintiffs attempt to enforce the BCLWO[184] through the MWPCL is perhaps the most troubling. The BCLWO does not contain a private right of action. *See* generally, BCLWO; *see also Abdelnaby v. Durham D&M LLC*, Civil Action No. GLR-14-3905, 2015 U.S. Dist. LEXIS 76984, at *4-5 (D. Md. June 15, 2015), *Ferruchi v. Wal-Mart Stores, Inc.*, No. WDQ-11-0228, 2011 U.S. Dist. LEXIS 48561, 2011 WL 1748573, at *5 n.12 (D.Md. May 5, 2011); *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 783 n.7 (D.Md. 2010); *West v. CSX Corp.,* No. JFM-05-3256, 2006 U.S. Dist. LEXIS 6071, 2006 WL 373843, at *1 (D. Md. Feb. 16, 2006). Nor could it, as the "the Baltimore City Council does not have the constitutional authority . . .to create private causes of action." *Bourgeois v. Live Nation Entm't, Inc.,* 3 F.Supp.3d 423, 452 (D.Md. 2014). Thus, the Maryland state legislature has the sole authority to create private rights of action for BCLWO, and chose not to do so here.[185]

 The BCLWO sets forth the sole mechanism by which an aggrieved individual can be made whole.

> Within **1 year** from the date of incident, any service worker may file a protest in writing within the Wage Commission, objecting to the wages paid for services performed by the service worker on a service contract as being less than the living hourly wage rate for those services.

---

[184] Transdev disagrees with Plaintiffs' interpretation of the BCLWO. First, Plaintiffs state that "contractors must ensure that all covered workers are not paid less than . . . the living hourly wage . . . [and] are paid an overtime rate" ECF 156-1 at 55-56. This implies that Transdev was responsible to ensure that Davi paid his employees the correct amount. Rather, the BCLWO placed this responsibility on Davi. BCLWO, §26-1(f), (g); §26-5(a) (ii); §26-6(a). Second, Plaintiffs state that "the Ordinance requires contractors to maintain payrolls and basic records." ECF 156-1 at 56. This implies that Transdev was responsible for maintaining Davi's payrolls and basic records. Rather, as Davi is considered a service contractor, the BCLWO places the responsibility on Davi to maintain its own records. BCLWO, §26-1(f); § 26-9(a).

[185] For example, the Maryland legislature chose to enforce certain counties anti-discrimination ordinances through the Maryland Code. *Wash. Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 994 A.2d 411, 429 (Md. 2010). These counties include Howard, Montgomery, Prince George's, and Baltimore Counties. Md. Code Ann., State Gov't §§ 20-1202 to-1203.

BCLWO, § 26-8 (emphasis added). To the extent the Court allows Plaintiffs to exploit the MWPCL by enforcing a claim under the BCLWO, it will be overriding the purview of the Maryland state legislature, and doing so beyond the one year statute of limitation contained in the ordinance. Thus, Plaintiffs are not entitled to summary judgment because the MWPCL is inapplicable, and because the MLWL and BCLWO cannot be enforced through the MWPCL.

### E.     The evidence does not support that treble damages are appropriate under the MWPCL.

To the extent the court finds that the MWPCL is applicable – and it should not for reasons set forth *supra* – treble damages are inappropriate. The MWPCL provides that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage." Md. Code Ann., Lab. & Empl. § 3-507.2(b). The assessment of whether a bona fide dispute exists centers on whether the party resisting the claim "has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing." *Admiral Mortg. v. Cooper*, 357 Md. 533, 745 A.2d 1026, 1031 (Md. 2000).

In this case, Transdev's subcontracts with Davi: (1) required Davi to pay legally mandated wages, (2) specified that Davi was responsible for administering its own payroll, and (3) stated that Transdev did not have any obligations to an "employer, subcontractor or suppler of [Davi] by virtue of this agreement."[186] Transdev believed that its subcontracts with Davi were enforceable, and that Davi would honor its contractual commitments.[187]  Thus, any failure by Transdev to pay Plaintiffs was due to a bona fide dispute regarding whether it was responsible for Plaintiffs' wages.

---

[186] Ex. 5 (BCHD Subcontract) at McCoy_Transdev001861, ⁋ 1; Ex. 7 (MTA Subcontract) at McCoy_Transdev018331.

[187] *Id.*

*Cf. Ruiz v. CMT Design Build*, LLC, Civil Action No. DKC 16-1011, 2016 U.S. Dist. LEXIS 104361, at \*5 (D. Md. Aug. 8, 2016)(in FLSA settlement context, finding a bona fide dispute exists when defendant contests joint employer liability for wage and overtime payments); *Bustos v. JCCS Servs*., Civil Action No. DKC 15-1161, 2016 U.S. Dist. LEXIS 103028, at \*7 (D. Md. Aug. 5, 2016)(same); *Beam v. Dillon's Bus Serv*., Civil Action No. DKC 14-3838, 2015 U.S. Dist. LEXIS 85388, at \*10 (D. Md. July 1, 2015)(same).

However, even if the Court does not find that a bona fide dispute exists, treble damages under the MWPCL are still inappropriate. It is well established that "when there is no evidence that wages were withheld based on a bona fide dispute, but plaintiffs also do not provide evidence of consequential damages they suffered due to the underpayments, it has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL." *Ramirez v. 316 Charles, LLC*, No. SAG-19-03252, 2020 U.S. Dist. LEXIS 237015, at \*25 (D. Md. Dec. 16, 2020)("."); *Sanabria v. Cocody, Inc.*, Civil Action No. DKC 16-0365, 2017 U.S. Dist. LEXIS 110920, at \*10 (D. Md. July 17, 2017)(same); *Hernandez v. Hoge*, Civil Action No. DKC 15-1988, 2016 U.S. Dist. LEXIS 66374, at \*9 (D. Md. May 19, 2016)(same). Here, Plaintiffs have not even attempted to offer evidence of consequential damages, and are precluded from doing so in reply, as Transdev would have no opportunity to respond. *DeCosta v. U.S. Bancorp*, Civil Action No. DKC 10-0301, 2010 U.S. Dist. LEXIS 101873, at \*9 n.2 (D. Md. Sep. 27, 2010).

Plaintiff's reliance on *Skripchenko v. VIRxSYS Corp*., Civil Action No. TDC-13-0004, 2014 U.S. Dist. LEXIS 136423 (D. Md. Sep. 26, 2014) is misplaced. In *Skripchenko*, the court found that there was no bona fide dispute because the defendant "neither submitted any evidence of, nor raise[d] the argument that there was, a bona fide dispute over Plaintiffs owed salaries or earned and unused vacation time." *Id.* at 31. In this case, Transdev argued and submitted evidence

44

that a bona fide dispute exists. For the foregoing reasons, Plaintiffs are not entitled to summary judgment in their favor that treble damages are appropriate under the MWPCL.

### F.  Plaintiffs are not entitled to summary judgment because Transdev's conduct was not willful.

The statute of limitations under the FLSA for a wage claim is two years, unless there is a "willful violation," which extends the limitations window to three years. 29 U.S.C. § 255(a). Plaintiffs assert that Transdev's violations are "indisputably willful." ECF 156-1 at 34.

A violation is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (quoting *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011)). "Typically, willfulness is found when the defendant was already investigated for an FLSA violation or when there is evidence that the defendant tried to cover-up an FLSA violation." *Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 364 (D. Md. 2015). Courts have found employers did not act willfully where they believed workers were exempt from the statute or otherwise did not understand their obligations under the law. *See e.g., Williams v. Loved Ones in Home Care, LLC*, No. 2:17-CV-04162, 2018 U.S. Dist. LEXIS 129573, 2018 WL 3676923, at *3 (S.D.W. Va. Aug. 2, 2018) (finding employer was not willful where there was no evidence they knew plaintiff should be classified as a nonexempt employee).

Here, Transdev is not Plaintiffs' employer. But even if Transdev is construed to be Plaintiffs' joint employer, its conduct was not willful because it is undisputed that it reasonably relied on its subcontracts with Davi and demanded Davi's compliance.[188] In fact, when Transdev became aware that drivers were complaining about underpayment, it promptly notified James

---

[188] Ex. 5 (BCHD Subcontract) at McCoy_Transdev001861; Ex. 7 (MTA Subcontract) at McCoy_Transdev018331.

Davis and reminded him of Davi's contractual obligations to pay legally mandated wages.[189] Similar to *Williams*, 2018 U.S. Dist. LEXIS 129573, Plaintiffs can produce no evidence that Transdev knew they should be classified as Transdev's employees.

Plaintiffs' reliance on *Heath v. Perdue Farms, Inc.,* 87 F. Supp. 2d 452, 460 (D. Md. 2000) is misplaced because the defendant continued to classify plaintiffs as independent contractors despite a decision by International Revenue Service Appeals Officer finding otherwise, and defendant's own acknowledgment that plaintiffs were employees. *Id.* at 461. Essentially, the defendant in *Heath* attempted to cover-up its FLSA violations. Transdev's behavior in no way resembles that of the *Heath* defendant. Transdev treated Plaintiffs as Davi employees throughout their work on the Contracts and paid invoices received from Davi for services provided.  The evidence does not support any averment to the contrary.

Similarly, Plaintiffs' reliance on *United States Dep't of Labor v. Fire & Safety Investigation Consulting Servs., LLC*, No. 1:17CV25, 2018 U.S. Dist. LEXIS 74777, at *26 (N.D.W. Va. May 3, 2018) is inapposite because this case examined FLSA applicability in the context of liquidated damages, not willfulness.[190] In fact, the court explicitly noted that the defendants "did not engage in willful or malicious conduct." *Id.* at 28.

And lastly, Plaintiffs reliance on *Chao v. A-One Med. Servs*., 346 F.3d 908, 919 (9th Cir. 2003) is misplaced because the court noted that defendant's previous FLSA violations put it on notice of other potential FLSA violations.  *Id*. at 919. Plaintiffs have not established any previous FLSA violations on behalf of Transdev.

---

[189] Ex. 58 (Email between S. Forman and Davi), at McCoy_Transdev015359-67.

[190] Plaintiffs have conceded that the standard for liquidated damages is different than the standard for willfulness. *Compare* ECF 156-1 at 34 to ECF 156-1 at 36.

Notwithstanding, Magistrate Judge Copperthite has already concluded that "[w]hether wage violations are willful really should be left to the province of the jury." ECF 162 at 6. Thus, Plaintiffs' arguments regarding willfulness are premature, making summary judgment inappropriate.

### G. Plaintiffs are not entitled to summary judgment because liquidated damages are inappropriate under the FLSA and MWHL.

The FLSA requires a district court to award liquidated damages equal to the amount of unpaid wages or overtime compensation, 29 U.S.C. § 216(b), unless the court, in its discretion, determines that "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. In this case, Transdev is not Plaintiffs' employer, and thus liquidated damages are inappropriate. *See* IV.A, *supra.* But even if Transdev is construed as Plaintiffs' joint employer, each of the cases relied upon by Plaintiffs are inapposite because they contemplate a direct employment relationship, and not a joint employment relationship as alleged here. Moreover, Transdev's good faith defense (*see* ECF 164 at 36) is supported by the fact that it reviewed the FLSA and MWHL and sought to comply with it.[191] Thus, Plaintiffs are not entitled to summary judgment because liquidated damages are not appropriate under the FLSA and MWHL.

### H. Plaintiffs are not entitled to summary judgment because they are not third-party beneficiaries under the MTA and BCHD Contracts.

Plaintiffs argue that they were third-party beneficiaries under the Transdev's contracts with MTA and BCHD. *See* ECF 156-1 at 57-62. For the reasons set forth in IV.E, *supra*, Plaintiffs are not entitled to summary judgment.

---

[191] Ex. 6 (S. Forman Dep.) at 189:16-190:19.

## CONCLUSION

For the foregoing reasons, Transdev requests that its Motion for Summary Judgment be

granted, and that Plaintiffs' Motion for Partial Summary Judgment be denied.

Respectfully submitted,

TRANSDEV SERVICES, INC.

/s/ Sunni R. Harris
William A. Sherman, II (1005932)
Sunni R. Harris (admitted *pro ha vice*)
Dinsmore & Shohl LLP
801 Pennsylvania Avenue, N.W., Suite 610
Washington, DC 20004
T: 202.372.9100
F:  202.372.9141
William.Sherman@dinsmore.com
Sunni.Harris@dinsmore.com

*and*

Johner T. Wilson III (811235)
Jessica E. Chang (admitted *pro hac vice*)
Dinsmore & Shohl LLP
222 West Adams St., Suite 3400
Chicago, Illinois 60606
T: 312.372.6060
F:  312.372-6085
JT.Wilson@dinsmore.com
Jessica.Chang@dinsmore.com

*Attorneys for Transdev Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 15, 2021, I electronically served the foregoing via CM/ECF which electronically served counsel of record. I have also sent a copy of this filing via U.S. mail to the following:

Joel Morrison
1960 Woodlawn Drive
Apartment E
Baltimore, MD 21207

Stacey Smith
530 E. 35th Street
Baltimore, MD 21218

/s/ Sunni R. Harris
Sunni R. Harris